# EXHIBIT D

8/28/2015 6:51:42 PM
**Velva L. Price**
**District Clerk**
**Travis County**
**D-1-GN-15-003245**
**Omorose Eguakun**

CAUSE NO. D-1-GN-15-003245

| | | |
|---|---|---|
| BRUCE MUNRO AND BRUCE MUNRO STUDIO, | § | IN THE DISTRICT COURT |
| *Plaintiffs,* | § | |
| vs. | § | OF TRAVIS COUNTY, TEXAS |
| | § | |
| LUCY ACTIVEWEAR, INC., LUCY APPAREL, LLC, | § | 345TH JUDICIAL DISTRICT |
| VF OUTDOOR, INC., AND VF CORPORATION | § | |
| *Defendants.* | § | |

## Amended Petition

World renowned artist **Bruce Munro** and **Bruce Munro Studio** ("Plaintiffs" or

"Munro") bring suit against Fortune 500 mega-retailer **VF Corporation** and its consolidated

reporting companies **Lucy Activewear, Inc.**, **Lucy Apparel, LLC**, and **VF Outdoor, Inc.**

("Defendants") for impermissibly basing a national branding, advertising, and PR campaign and

related large-scale exhibition entitled *Light Forest* that promotes their *lucy*® womenswear

apparel brand and *lucy*® Activewear stores on Munro's trademarks, trade dress, and

internationally-acclaimed, signature large-scale, immersive, light-based works known as *Forest

of Light*™ and *Field of Light*® and usurping,  interfering with, and misappropriating Munro's

valuable creative skills, efforts, resources, reputation, business opportunities, and life's work in

the process.

### Discovery

1.      Discovery shall be under Level II of the discovery control plans.

### Nature of the Action

2.      These Defendants and their hand-picked advertising agency **Mono Advertising,**

**LLC** ("Mono") intentionally and maliciously exploited Munro's famous signature *Field of*

*Light*® and *Forest of Light*™ works and the associated marks, trade dress, goodwill, substantial

resources, and decades of effort that went into Munro's creation, production, and promotion of

1



these acclaimed works.

3.      They did so for their own commercial benefit and to promote, publicize, and spur apparel sales at their online and retail *lucy*® Activewear stores and under their *lucy*® apparel brand via an extensive nationwide advertising and publicity campaign (hereafter, the "Multimedia Campaign") centered around a well-publicized *lucy*® branded exhibition of a recognizable imitation of Munro's *Field of Light*® and *Forest of Light*™ works that Defendants and Mono uncoincidentally named and extensively promoted as the *Light Forest*.

4.      They did this with specific prior awareness of Munro and his stellar, global reputation and acclaim as a successful, sought-after artist, of Munro's famous *Field of Light*® and *Forest of Light*™ works, trademarks, and trade dress, of Munro's rights in and related to those works, of the public acclaim for and association of those famous works and their names and recognizable trade dress with Munro, <u>and</u> of their own failure to negotiate permission from Munro to use or employ Munro's works or associated intellectual property (despite multiple exchanges with Munro's Texas representative about doing so). In fact, under ultimately ignored promises of confidentially, they had requested and previously received packets of information from Munro's Texas representative about Munro, the famous *Field of Light*® and *Forest of Light*™ works, and prior exhibitions of those works.

5.      Nevertheless, with the accompanying media exposure, publicity, and artistic decorum of P.T. Barnum bringing the circus to town, Defendants and Mono launched their *Light Forest* exhibition and associated *Light Forest* Multimedia Campaign, which they promoted and publicized with in-store displays, extensive "buzz" guerilla-marketing efforts, related TV, video, print, online, and social media ads, and consumer-engagement promotions all oriented around and incorporating the knock-off, confusingly-similarly named *Light Forest* exhibition.



Defendants' Multimedia Campaign appeared nationwide and in Texas and remains readily available online.

6.      Defendants (and Mono) unquestionably benefited immensely from their unauthorized competitive exploitation and appropriation of Munro's works, efforts, and associated intellectual property and business methods, which enabled them to more rapidly and at significantly less cost and commercial risk design, develop, prototype, pitch, secure prime civic exhibition space for, plan, launch, and publicize their *Light Forest* exhibition and Multimedia Campaign without the attendant creative skills, efforts, and trial and error of starting such a project or artistic endeavor from scratch or the accompanying uncertainty over how the resulting work might eventually be received by potential exhibitors or the public.

7.      Unsurprisingly, just like Munro's *Field of Light*® and *Forest of Light*™ exhibitions, Defendants' knock-off *Light Forest* exhibition and *Light Forest* Multimedia Campaign were an incredibly well-received successes, resulting in over 100,000 in-person visitors, 307,000,000 PR media impressions, and untold apparel sales and profits for the Defendants. Mono publicized and crowed over these results on its "Lucy Activewear" client site http://mono-1.com/work/lucy-activewear-light-forest, where it also emphasized that "[d]uring the [*Light Forest* exhibition] event, 35% of all traffic to lucy.com came from lucylightforest.com" and where it continues to make Multimedia Campaign materials publicly available to this day. At typical industry valuations of $12 per thousand impressions, Defendants inequitably benefited from their exploitation of Munro's works and intellectual property to the tune of over $3,684,000 just on the value of these PR media impressions alone. The in-person visitors were worth millions more.

8.      Defendants and Mono continue to run, promote, publicize, sell under, and benefit

3



from the Multimedia Campaign (which remains available on Mono's and *lucy*®-related web and social media sites, including www.lucylightforest.com, http://mono-1.com/work/lucy-activewear-light-forest, Twitter and Instagram hash-tags #lucylightforest, and Facebook page https://www.facebook.com/media/set/?set=a.10151920807704489.1073741830.38897224488&type=3), despite written notice from Munro in August 2014 demanding that they cease doing so.

**Recovery & Relief**

9.  Defendants are liable for fraud, misappropriation, trade dress and trademark infringement, false designation of origin, dilution, injury to business reputation, tortious interference, unfair competition, conspiracy, and unjust enrichment under common law, Texas and federal statutes, and equitable principles. E.g., 15 U.S.C. §§ 1114 - 1118, 1125(a) and (c), and 1126; Tex. Bus. & Com. Code §§ 16.103-.104

10.  Munro is entitled to an award of injunctive, monetary, declaratory, exemplary, and equitable relief, including an accounting and a constructive trust.

11.  Munro seeks monetary relief of over $1,000,000 and other non-monetary relief. See Tex. Rule Civ. Pro. 47. The damages sought are within this court's jurisdictional limits.

12.  All claims and causes of action are based on the same operative facts.

**Parties**

13.  Plaintiffs Bruce Munro and Bruce Munro Studio, a d/b/a of Bruce Munro Ltd., are residents of England with business activities in Texas and the United States.

14.  Defendant Lucy Activewear, Inc. ("LAI") is a Delaware corporation operating in Texas. LAI is headquartered at 2701 Harbor Bay Parkway, Alameda, California 94502, its registered address is 3411 Silverside Road, Suite 200 Hanby Building, Wilmington, Delaware 19810, and its Delaware registered agent is Corporation Service Company, 2711 Centerville

4



Road, Suit 400, Wilmington, Delaware 19808. LAI does not have a registered agent for service of process in Texas and thus may be served via Texas' Secretary of State.

15.   Defendant Lucy Apparel, LLC ("LLC") is a Delaware company operating in Texas. LLC's registered address is 3411 Silverside Road, Suite 200 Hanby Building, Wilmington, Delaware 19810, and its Delaware registered agent is Corporation Service Company, 2711 Centerville Road, Suit 400, Wilmington, Delaware 19808. LLC does not have a registered agent for service of process in Texas and thus may be served via Texas' Secretary of State.

16.   Defendant VF Outdoor, Inc. ("VFO") is a Delaware corporation operating in Texas. VFO is headquartered at 2701 Harbor Bay Parkway, Alameda, California 94502, its registered address is 3411 Silverside Road, Suite 200 Hanby Building, Wilmington, Delaware 19810, and its Delaware registered agent is Corporation Service Company, 2711 Centerville Road, Suit 400, Wilmington, Delaware 19808. VFO does not have a registered agent for service of process in Texas and thus may be served via Texas' Secretary of State.

17.   Defendant VF Corporation ("VF Corp") is the $12 billion Fortune 500 apparel and footwear manufacturer and retailing conglomerate behind the *lucy*®, Wrangler®, Vans®, Lee®, Nautica®, Timberland®, North Face®, and other well known apparel brands and retail stores. Defendants LAI, LLC, and VFO are consolidated reporting divisions of VF Corp. VF Corp is headquartered at 105 Corporate Center Blvd., Greensboro, North Carolina 27408 and has extensive Texas operations. VF Corp does not have a registered agent for service of process in Texas and thus may be served via Texas' Secretary of State.

18.   LAI, LLC, VFO, and VF Corp are collectively referred to herein as "Defendants" or "Lucy." On information and belief, the Defendants jointly and collectively (a) control and



profit from business done under the *lucy*® brand and through the *lucy*® Activewear stores; (b) own, operate, and control either directly or indirectly all brand and store related assets, sales, and revenues; and (c) amount to a single business enterprise and act as agents of one another for *lucy*® brand-related matters and business. Accordingly, though LAI serves as the public face and primary operating entity for *lucy*®-related activities, each Defendant is directly, vicariously, and jointly responsible and liable for all Defendants' *lucy*® brand-related activities, including the activities alleged herein.

### Jurisdiction & Venue

19.    The amount in controversy exceeds this court's minimum jurisdictional amount.

20.    Each Defendant does regular business in Texas, has sufficient due process Texas minimum contacts to compel it to appear and respond in this action, is subject to this court's personal and subject matter jurisdiction, and is subject to process under the Texas long-arm statute and other law. See Tex. Civ. P. & Rem. Code §§ 17.041-.045; Tex. R. Civ. P. 120a.

21.    Defendants have significant, ongoing business in Texas. They own and operate *lucy*® Activewear retail stores in Houston, Dallas, San Antonio, and Grapevine. Every day they promote and sell *lucy*® branded merchandise to Texas (and Travis County) residents through their Texas stores, catalogs, and online outlets and through and under TV, print, social media, and online advertising, including via their exploitive *Light Forest* Multimedia Campaign.

22.    On behalf of Defendants, their agent Mono spoke and made promises to, corresponded with, and requested and received *Field of Light*® and *Forest of Light* ™-related materials from Munro's Austin-based representative. These substantive communications form, in part, the basis for these claims and occurred at least in part in Austin, Texas.

23.    Venue is proper in Travis County, Texas because a substantial part of the events



giving rise to the claims occurred in Travis County.

### Agency & Vicarious Responsibility

24.    Defendants and LAI retained and hired Mono as its advertising, branding, and PR agency on and for the *lucy*® brand and *lucy*® Activewear stores, including for all matters pertaining to the *Light Forest* exhibition and Multimedia Campaign

25.     Mono acted, spoke, and served as Defendants' and LAI's agent and representative on the matters described herein, including in all of its communications and interactions with Munro or related to the *Light Forest* exhibition and Multimedia Campaign. Mono acted with and had actual and apparent authority. Mono's actions and statements described herein were within the scope of and in furtherance of its agency and authority.

26.    Defendants and LAI ratified, adopted, and benefited from Mono's acts and statements.

27.    Mono facilitated, encouraged, materially assisted with, directly participated in, and aided and abetted Defendants' and LAI's conduct and activities described herein.

28.    All statements, acts, and knowledge of Mono are attributable to Defendants and LAI.

29.    Defendants are vicariously and directly responsible and liable for Mono's acts, statements, conduct, decisions, and omissions described herein.

### Discovery Rule

30.    The discovery rule, the doctrine of equitable tolling and estoppel, and the continuing tort doctrine apply to Munro's claims. Defendants' and Mono's activities and falsehoods underlying Munro's claims were concealed from Munro and were inherently undiscoverable, even through the exercise of reasonable care.

7



**The Artist Bruce Munro**

31.    Bruce Munro is a globally acclaimed and internationally recognized artist best known for large-scale, immersive, light-based works, sculptures, installations, and exhibitions, which he produces through his studio, Bruce Munro Studio.

32.    For most of his life, Munro has learned, refined, and practiced his craft and artistry, which has been and is his livelihood and life's passion.

33.    From Munro's significant investment of time, energy, and resources into his craft, Munro has developed a unique and signature style that the public and the art community values, appreciates, and associates with Munro and Munro's works.

34.    Munro's works are desired and lauded around the world and have been displayed and exhibited at preeminent and notable galleries, facilities, and public spaces that included Houston's Discovery Green Park, the United Kingdom's Salisbury Cathedral, the Atlanta Botanical Gardens, and Pennsylvania's Longwood Gardens—one of the most famous display gardens in all of North America. Munro's exhibitions, particularly of his famous signature *Field of Light*® and *Forest of Light*™ works, routinely generate substantial media, public, and online interest and underwriter sponsor support, driven in part by attendant authorized seminars, presentations, events, and multimedia and social media promotions.

35.    Munro's honors include the Guggenheim Museum's 2010 invitation in celebration of its 50th anniversary to display in the inspirational rotunda of the Frank Lloyd Wright–designed Guggenheim building in Manhattan, a 2011 Artist of the Year Award from *Wiltshire Life Magazine*, and the 2013 American Alliance of Museums Excellence in Exhibition Award. Munro and the Munro works are also frequent subjects of articles, media interviews, stories, and reports, including a PBS documentary.

8



36.     Private art collectors and investors also retain and commission Munro to produce specially-commissioned, high-value works. These commission opportunities and sales are spurred largely by Munro's exhibitions and their attendant publicity and interest.

### Munro's Acclaimed *Forest of Light*™ and *Field of Light*® Works

37.     Munro created and owns all rights associated with the highly acclaimed *Field of Light*® and *Forest of Light*™ works.

38.     *Field of Light*® and *Forest of Light*™ are Munro's best-known works. They incorporate and typify the unique large-scale, immersive, light-based signature style that the public has come to associate with Munro, which the *Washington Post* in 2012 colloquially described in part as a "recurring motif of lights on stalks."

39.     *Field of Light*® and *Forest of Light*™ are Munro's calling card. They are the primary driver of and hold inestimable value to Munro's business and livelihood.

40.     Munro expended substantial time, effort, labor, money, and resources conceiving, developing, designing, making, promoting, and displaying the *Field of Light*® and *Forest of Light*™ works, as well as their associated business, production and promotional models.

41.     During the past decade, Munro has presented and exhibited *Field of Light*® and *Forest of Light*™ at preeminent facilities, venues, and public spaces worldwide, including in Texas and around the United States. *Field of Light*® and *Forest of Light*™ have been seen and visited by millions of people and lauded in myriad media and online reports, including for example feature articles in the *Washington Post*. Exhibitions of *Field of Light*® and *Forest of Light*™ have consistently driven media and public interest, attendance, revenues, and publicity for exhibitors and Munro and have regularly resulted in hundreds of thousands of attendees, millions in underwriting, ticketing, gift shop, and food court revenues, and immensely valuable

9



PR media impressions and online and social media engagement,

42.     Munro works with exhibitors (like Longwood Gardens and Tennessee's Cheekwood Botanical Gardens & Museum of Art) to collaboratively generate positive regional, national, and international publicity and coverage for and interest in Munro's exhibitions of *Field of Light*® and *Forest of Light*™. Those efforts include traditional PR and online and social media campaigns built around the splendor of Munro's works. Results include widespread media reporting on Munro's works and Munro, as exemplified by the *Washington Post* article.

43.     Exhibitors also receive valuable substantial increases in web traffic and traditional and social media mentions for Munro *Field of Light*® and *Forest of Light*™ exhibitions versus a typical exhibition, with some reporting more than double their ordinary number of unique website visitors during Munro's exhibitions.

44.     Beyond the stunning artistic beauty of Munro's creations, tangible results such these—driven largely by the unique nature and recognizable signature aspects of Munro's creations—underlie exhibitors' desire and demand for Munro's *Field of Light*® and *Forest of Light*™ and their exhibition.

45.     From mid summer to early fall of 2012, Munro exhibited *Field of Light*® and *Forest of Light*™ at Pennsylvania's Longwood Gardens to regional and national publicity that included feature reports on Munro, the exhibit, and *Field of Light*® and *Forest of Light*™ in national publications such as the *Washington Post*. Munro's Longwood exhibition, which Cheekwood Botanical Gardens & Museum of Art later described as "wildly popular" in announcements for its own subsequent Munro exhibition, drew over 300,000 attendees, many from more than three hours away. How popular was it?  By comparison, the *Rolling Stones'* 2014 concert tour, one of the top tours of 2014, drew 651,816 attendees. In just one exhibition at



Longwood, Munro and Munro's *Field of Light*® and *Forest of Light*™ works drew roughly half that. As Longwood's director Paul Redman noted to the *Washington Post* about Munro, "'When that exhibit opened, he was a rock star. He was a rock star.'"

### Munro's Intellectual Property and the Famous Trade Dress and Trademarks associated with Munro's *Forest of Light*™ and *Field of Light*®

46.     Munro owns and uses registered and common law marks in connection with *Field of Light*® and *Forest of Light*™ and Munro's related activities and endeavors. They include the United Kingdom registered mark *Field of Light*® (UK Reg. No. UK00002559786, registered Dec. 31, 2010) and the common law mark *Forest of Light*™ (collectively, the "Munro Marks").

47.     Munro's *Field of Light*® and *Forest of Light*™ works incorporate, exemplify, and have associated with them (and with Munro) a particular, valuable trade dress consisting of a non-functional design that is both inherently distinctive and distinctive by virtue of having acquired secondary meaning (the "Munro Trade Dress").

48.     The Munro Marks and the Munro Trade Dress and their goodwill are valuable important intellectual property assets of Munro.

49.     Munro adopted, used in commerce, and publicized the Munro Marks and the Munro Trade Dress in the United States, the United Kingdom, and elsewhere in connection with the *Field of Light*® and *Forest of Light*™ works, Munro exhibitions, and associated Munro endeavors. Munro has continuously used those marks and trade dress in the United States, the United Kingdom, and elsewhere. (Accordingly, Munro is also entitled to protections for the Munro Marks and the Munro Trade Dress under 15 U.S.C. § 1126 and associated international conventions and treaties.)

11



50.     Munro, Munro's *Field of Light*® and *Forest of Light*™ works, and Munro's associated exhibitions have achieved outstanding critical success and widespread recognition, including with public, the media, the arts community, and exhibitors.

51.     Based on Munro's tremendous work and effort and the immense goodwill that Munro, the Munro Marks and Trade Dress, and the *Field of Light*® and *Forest of Light*™ works and associated exhibitions have engendered, Munro's works and exhibitions are desired, valued, and rank among exhibitors' most appreciated and best attended. They often are among exhibitors' top annual attendance- and revenue-generating art events and routinely draw attendees from hours away.

52.     Munro and the *Field of Light*® and *Forest of Light*™ works have achieved a reputation for high-quality, well-attended, highly-appreciated, revenue-enhancing exhibitions. Gallery, venue, and public and civic event space curators and their underwriters consequently are eager to affiliate and associate with Munro for exhibitions and opportunities involving the *Field of Light*® and *Forest of Light*™ works and associated sanctioned artistic events, activities, and promotions under or connected with the Munro Marks and the Munro Trade Dress.

53.     As a result of the immense goodwill and interest engendered by Munro and the *Field of Light*® and *Forest of Light*™ works, Munro's endeavors have grown to include an online presence, books, publications, videos, and documentaries on Munro and Munro's works.

54.     The goodwill Munro developed in the Munro Marks and the Munro Trade Dress is an asset of inestimable value to Munro. It is critically important to Munro's livelihood, to Munro's artistic reputation, and to Munro's marketing and promotion of his works, services, and endeavors, including exhibitions of Munro's *Field of Light*®, *Forest of Light*™, and other works, sponsored underwriting, and sales of specially commissioned works.



55.     Munro spent years of time, labor, money, and effort establishing the Munro Marks and the Munro Trade Dress in the minds of consumers—including gallery, venue, and public event space curators, underwriters, collectors, art enthusiasts, and the public—as representative of high-quality, distinctive works and quality exhibitions. As a result, consumers associate the Munro Marks and the Munro Trade Dress with not only Munro's *Field of Light*® and *Forest of Light*™ works but also with Munro as an acclaimed artist and provider and producer of successful, high-quality, critically-acclaimed exhibitions and related officially-sanctioned services and merchandise.

56.     The Munro Marks and the Munro Trade Dress are inherently distinctive and are associated in the minds of consumers, the public and the trade with Munro, Munro's *Field of Light*® and *Forest of Light*™ works, and Munro's associated exhibitions. The Munro Trade Dress is arbitrary and fanciful and is entitled to the highest protections afforded by law.

57.     As a result of the extensive publicity, advertising, promotion, and acclaim of and for Munro, Munro's *Field of Light*® and *Forest of Light*™ works, and Munro's associated exhibitions and endeavors under the Munro Marks and the Munro Trade Dress, the Munro Marks and the Munro Trade Dress are famous within the meaning of the Lanham Act and similar state laws and have acquired secondary meaning so that they have come to identify Munro as the source of such works and associated goods, services, exhibitions, events, and activities and so that any product, service, event, exhibition, promotion, or advertising bearing, incorporating, or marketed under such marks or trade dress or and confusingly-similar imitation thereof is associated by consumers, the public, and the trade as being affiliated with Munro.

**The Defendants use and retain Mono to Rebrand and
Promote their *lucy*® Activewear Stores and *lucy*® Apparel Brand**

58.     Defendants are consolidated reporting companies within VF Corp, one of the

13



world's largest manufacturers and retailers of apparel and footwear and a Fortune 500 company

with over $1 billion in net income and $12 billion in revenues in 2014.

59.     Together, the Defendants manufacture, promote, and sell women's activewear

under their *lucy*® apparel brand through branded online retail outlets and via a national chain of

*lucy*® Activewear retail stores that they own and operate. Defendants have multiple *lucy*®

Activewear and other storefront retail outlets in Texas.

60.     LAI is the consumer-facing organization for the *lucy*® brand and the *lucy*® stores

and has significant operational input, including on all matters described here. Nevertheless, all

Defendants benefit from sales under the *lucy*® brand and the *lucy*® stores and participate directly

or indirectly in those sales and related business activities.

61.     Mono Advertising, LLC is an advertising agency operating under and partially

owed by advertising conglomerate MDC Partners, Inc. Defendants, including LAI, used and

retained Mono as their advertising agency of record in connection with branding, advertising,

and publicity initiatives for Defendants' *lucy*® apparel brand and *lucy*® Activewear retail stores.

**Defendants knock off Munro's Marks, Trade Dress and *Forest of Light*™
and *Field of Light*® Works for their Mono-designed National Womenswear PR
and Advertising Campaign Promoting their *lucy*® Apparel Brand and Retail Stores**

62.     Following Munro's successful and well-publicized Longwood Gardens

exhibition, Mono producer and employee Melissa Rothman approached Munro representatives to

discuss and propose an advertising, branding, and experiential promotional campaign for

Defendants' *lucy*® apparel brand and *lucy*® Activewear stores. Ms. Rothman explained that she

was working on behalf of the Defendants and Mono and that the planned campaign would be

designed around and promoted via a commercially publicized public exhibition of Munro's

*Forest of Light*™ or *Field of Light*® works and related tag-along social and traditional media

14



publicity initiatives.

63.     Ms. Rothman discussed with Munro's Austin-based representative the prospective *lucy*® project, Munro's *Field of Light*® and *Forest of Light*™ works, and their prior exhibitions (which she knew of) and followed up with additional correspondence with Munro's Austin-based representative on those subjects.

64.     During the discussions, Ms. Rothman requested additional information and materials about Munro's *Field of Light*® and *Forest of Light*™ works and exhibitions, related attendance figures, achieved online/multi-media traffic, and promotional methods used for the exhibitions. Ms. Rothman explicitly agreed and specifically promised to keep all provided materials confidential.

65.     In reliance on these promises and representations, Munro's Austin-based representative sent Ms. Rothman a packet containing the requested information. The packet included multiple illustrations of Munro's *Field of Light*® and *Forest of Light*™ works, examples of the use of the Munro Marks and Munro Trade Dress, discussions on business methods used to effectively promote Munro's exhibitions and drive attendance and online engagement, attendee survey results and comments regarding awareness, interest in, and appreciation of Munro's works, and other data supporting the value proposition to exhibitors and attendees of exhibitions promoted using the Munro Marks and Munro Trade Dress and featuring Munro's works.

66.     At that time, public officials in Boston's Mayor's Office of Arts, Tourism & Special Events were also courting and had contacted Munro. They had seen and experienced Munro's Longwood Gardens exhibition, were mesmerized by it, and expressed intense interest in bringing a public exhibition of Munro's works to Boston in the upcoming year. During discussions between Munro's Austin-based representative and Mono's Ms. Rothman, this

15



opportunity was mentioned as an upcoming chance for Defendants to underwrite a major

metropolitan public exhibition of Munro's *Field of Light*® or *Forest of Light*™ works in the near

future (while avoiding overt commercialization of Munro's works).

67.     Shortly thereafter, however, Mono and Ms. Rothman ceased communications

with Munro's representatives about the *lucy*® proposal. Munro and Munro's representatives did

not hear from Ms. Rothman or Mono (or the Defendants) again and were left to assume that

Mono and the Defendants had simply decided to shelve the proposed project and go in an

entirely different direction with Defendants' upcoming *lucy*® advertising and branding campaign.

68.     Not long after, communications with Boston public officials on the opportunity

for an exhibition tapered off, too.

69      Unbeknownst to Munro, Defendants and Mono had not shelved the project.

70.     Instead, they were secretly proceeding full steam ahead. Using the additional

knowledge and information they gained (under promises of confidentiality) about Munro's *Field

of Light*® and *Forest of Light*™ works, Munro's immersive, large-scale exhibitions of those

works, methods to publicize and drive online engagement and in-person attendance at those

exhibitions, attendance figures and attendee feedback, and other associated competitive business

information acquired from Munro's Austin-based rep, Defendants and Mono set about planning

and developing an independent *lucy*® public exhibition.

71.     In breach of their earlier promises of confidentiality, Mono and the Defendants

referenced and used the confidentially supplied materials and information to plan out and design

and develop their planned exhibition and promotional methods. That exhibition, which would

stay the focal point of the *lucy*® national branding, advertising, awareness, and social media

campaign for Defendants' *lucy*® apparel brand and *lucy*® Activewear stores, was unabashedly



modeled after and on Munro's *Field of Light*® and *Forest of Light*™ works, the Munro Marks and Munro Trade Dress, and Munro's business and promotional methods.

72.     Defendants and Mono quickly (and not coincidentally) selected Boston—the city courting Munro—for their first *lucy*® exhibit, even though *lucy*® Activewear's base was on the west coast. They and their agents also contacted local and regional public officials, secured a prominent Boston public space for their competitive, knock-off *lucy*® exhibition, and planned out associated logistics.

73.     As result of Mono's and Defendants' actions, Boston officials on information and belief ceased discussions with Munro for a Boston-area exhibition. Consequently, Munro lost that premier exhibition opportunity as well as the commensurate publicity, engagement, specialty commissions, private sales, revenues, and momentum for follow-on exhibitions of Munro's large scale, immersive, light-based works that a Boston exhibition would bring. Defendants on the other hand, on information and belief, usurped that opportunity with their own *lucy*® exhibition.

74.     By modeling their planned exhibit on and after Munro's obviously successful *Field of Light*® and *Forest of Light*™ works, Munro Trade Dress, Munro Marks, and Munro's production, promotion and business methods, Defendants and Mono assured their project's success and avoided the significant costs, delays, creative insights, trial and error, labor, planning, and resources ordinarily necessitated to conceive of, design, refine, and successfully implement an endeavor of the scope and scale of Munro's large scale, light-based, immersive works or of Defendants' knock-off imitation.

**Defendants and Mono launch their Knock-off**
***Light Forest* Exhibit and Nationwide Multimedia Campaign**

75.     To widespread promotion, publicly, and public interest, Mono and the Defendants unveiled along the banks of Boston's Charles River Esplanade their own public exhibition of a



strikingly-similar, large scale, immersive, light-based work they dubbed the *Light Forest*. They made the *Light Forest* exhibition the focal point of an identically-named national branding, advertising, awareness, and online and social media engagement campaign for Defendants' *lucy*® apparel brand and *lucy*® Activewear stores (i.e., the Multimedia Campaign) using images, copy, visitor comments and photos, and promotions from and relating to the knock-off exhibition.

76.    In competition with Munro (including for exhibitors, attendees, and publicity), Mono and Defendants heavily cross-promoted the *Light Forest* exhibition both locally and nationally, including through social media engagement campaigns and "earned" or "buzz" media press mentions.

77.    Unsurprisingly, Defendants' knock-off *Light Forest* exhibition and the associated long-term Multimedia Campaign, which included national TV and web spots, print, in-store mock-up displays, and extensive experiential, online, and social media promotion and engagement, were an immense success. Mono announced on its "Lucy Activewear" client site http://mono-1.com/work/lucy-activewear-light-forest that the *Light Forest* exhibition and derivative Multimedia Campaign drew over 100,000 in-person visitors, fueled over 307,000,000 related PR media impressions, and successfully drove web-traffic, interest, engagement, and sales for Defendants' *lucy*® apparel brand and *lucy*® Activewear stores. In industry presentations, Mono founder and senior executive Jim Scott bragged that the *Light Forest* exhibition and Multimedia Campaign "ha[d] brought incredible results."

78.    The knock-off *lucy*® *Light Forest* Multimedia Campaign remains live and visible online and, on information and belief, Defendants and Mono continue to promote the *lucy*® apparel brand and *lucy*® Activewear stores and market and sell apparel and merchandise under the derivative Multimedia Campaign. Defendants and Mono also publicized their intent to hold

18



more *Light Forest* exhibitions in additional cities, citing in part the success and nationwide interest generated by the first exhibition.

79.     On information and belief, Defendants have sold at least tens of millions of dollars of apparel and merchandise through their *lucy*® Activewear stores and under the *lucy*® apparel brand during the course of and in connection with the knock-off *Light Forest* exhibition and *Light Forest* Multimedia Campaign. Indeed, for some time Defendants' primary branding, marketing, and consumer engagement and outreach initiative for their *lucy*® brand was the Multimedia Campaign.

80.     Defendants' competitive *Light Forest* exhibition and associated Multimedia Campaign was and is little more than an unauthorized and confusingly similar commercial imitation, replication, exploitation, and use of Munro's *Field of Light*® and *Forest of Light*™ works, associated business and promotional methods, and the Munro Marks and Munro Trade Dress, which Defendants and Mono exploited and appropriated to promote and publicize Defendants' own brands, stores, and products by associating Munro and his valuable goodwill with Defendants' *lucy*® brand and offerings without approval from or compensation to Munro.

81.     Defendants' and Mono's absence of independent creativity or thought on the *Light Forest* exhibition and associated Multimedia Campaign is readily apparent. Tellingly, Defendants and Mono simply used and transposed the words of Munro's protected *Forest of Light*™ mark (and a portion of Munro's *Field of Light*® UK mark) to come up with the confusingly similar and virtually identical "*Light Forest*" moniker that they used to market and promote the exhibition, the Multimedia Campaign, and Defendants' *lucy*® apparel brand and *lucy*® Activewear stores.

82.     They also adopted and slavishly imitated a combination of inherently distinctive

19



(and distinctive through secondary-meaning), non-functional design features and elements of Munro's Trade Dress from Munro's signature *Field of Light*® and *Forest of Light*™ works (including but not limited to the large-scale, immersive, light-based design utilizing arrays of thousands of short, end-lighted stems with variably lit bulbs traversably laid out upon a predominantly green space), resulting in their *Light Forest* exhibition and derivative Multimedia Campaign substantively and noticeably imitating and reflecting the overall image, design, appearance, look, and feel of Munro's Trade Dress, Munro's *Field of Light*® and *Forest of Light*™ works, and Munro's exhibition methodologies.

83.     On information and belief, Defendants and their agents knowingly, willfully, and in bad faith—with the specific intent to usurp and obtain the benefit of public goodwill associated with Munro, Munro's works, and the Munro Marks and the Munro Trade Dress after specific observation and analysis of and reference to the Munro Marks and the Munro Trade Dress, including via visual observations and analysis of the *Field of Light*® and *Forest of Light*™ works or reproductions thereof and via the materials and information Munro confidentially provided to Mono that illustrated the Munro Trade Dress and displayed and named the *Field of Light*® and *Forest of Light*™ works—selected, adopted and used terms, slogans, and designs confusingly similar to the Munro Marks and the Munro Trade Dress

84.     Defendants' and Mono's adoption and use of these confuse similar terms, slogans, and designs in their *Light Forest* exhibition and Multimedia Campaign post-date Munro's use in commerce of the Munro Marks and the Munro Trade Dress in the United States and in the United Kingdom.

85.     The exhibitions, activities, experiences, and events promoted and conducted by the Defendants and the merchandise and brands promoted and sold by the Defendants under or in



connection with their unauthorized use and exploitation of the Munro Marks and Munro Trade Dress compete with authentic offerings available from Munro and from Munro's legitimate authorized exhibitors, licensees, and sponsors.

86.     The Defendants use and have used the term "Light Forest" and the overall look and feel of the Munro Trade Dress on advertising, promotional, and publicity materials and efforts connected with their business in manners identical or confusingly similar to Munro's use of the Munro Marks and Munro Trade Dress. The Defendants' selected "Light Forest" moniker and trade dress for the *Light Forest* exhibition and Multimedia Campaign are identical to or are confusingly similar, colorable variations of the Munro Marks and Munro Trade Dress.

87.     On information and belief, the Defendants' offerings under their imitations of the Munro Marks and Munro Trade Dress are of dissimilar quality from competitive offerings available from Munro and Munro's legitimate authorized exhibitors, licensees, and sponsors.

88.     Defendants (and Mono) by their acts described herein have caused their goods, services, and misleading advertising and promotions to be displayed and sold in interstate commerce in the United States, Texas, and Travis County under the knock-off *Light Forest* exhibition and *Light Forest* Multimedia Campaign.

89.     Without authorization, the Defendants (and Mono) have used in interstate commerce a reproduction, counterfeit, copy or confusingly similar or colorable imitation of the Munro Marks and Munro Trade Dress in connection with the sale, offer for sale, distribution, advertising and promotion of goods, merchandise, services and events, with such uses being likely to cause confusion or to cause mistake or to deceive. The Defendants' (and Mono's) prominent and extensive use and display of confusingly similar, colorable imitations of Munro's famous *Forest of Light*™ name and the famous Munro Marks and Munro Trade Dress in

21



advertising and on promotional materials for the Defendants' offerings has caused and is likely to cause confusion and mistake among the purchasing and consuming public, or will deceive the purchasing and consuming public as to the origin, sponsorship, or approval of the goods, merchandise, services, events, and activities of the Defendants and/or otherwise cause confusion or mistake among the purchasing and consuming public or deceive the purchasing and consuming public.

90.     Munro has no control over the nature or quality of the Defendants' (or their agent Mono's) offerings under the "Light Forest " moniker or the imitated Munro Trade Dress. Any failure, neglect, or default by them has or will reflect adversely on Munro as the perceived source of origin or approval of the Defendants' offerings, thereby hampering efforts by Munro to continue to protect Munro's and the Munro works' outstanding reputation and resulting in a loss of goodwill, reputation, fees, sales, publicity, and exhibition opportunities and a loss of the considerable expenditures that have been made to create, establish, and promote Munro, Munro's works, and Munro's legitimate offerings under Munro's marks and trade dress, all to the irreparable harm of Munro.

91.     To the great detriment of Munro, the Defendants' unauthorized use of the famous Munro Marks and Munro Trade Dress and imitations and derivations thereof has resulted in the dilution of the exclusive rights that Munro is entitled to enjoy in connection with these marks and trade dress and their use in connection with the promotion of Munro's and authorized exhibitors' or licensees' works, exhibitions, merchandise, services and events.

92.     The Defendants' (and their agent Mono's) unauthorized use of Munro's famous Munro Marks, Munro Trade Dress, and imitations and derivations thereof in connection with their activities described herein is likely to cause confusion, mistake, or deception as to the

22



affiliation, connection, or association of the Defendants with Munro or as to the identity, origin, sponsorship, or approval of the Defendants' offerings such that consumers and purchasers will be likely to associate or have associated the Defendants' offerings (including activities, events, exhibitions, merchandise, apparel, brands, and services) with and as originating from or being approved or recommended by Munro.

93.     Defendants' (and their agent Mono's) imitation of Munro's acclaimed signature works, choice of a virtually identical moniker for their exhibition and Multimedia Campaign, decision to first exhibit in the identical locale that was courting Munro for a public exhibition, and use of strikingly similar promotional methods were not mere coincidence. The decisions were part of a thought-out plan by Defendants and Mono to wholly appropriate for their benefit, use, and advantage the features, goodwill, and successful track record of Munro's *Field of Light*® and *Forest of Light*™ works and exhibitions for their own *Light Forest* exhibition, their own derivative promotional, advertising, branding, social media, and online *Light Forest* Multimedia Campaign, and their own promotion and sale of *lucy*® goods and apparel thereunder, all without the attendant costs of fairly compensating Munro or the attendant lead time, project risk profile, trial and error, and costs, labor, and creative skills and efforts necessary to conceive, design, and develop a dissimilar (yet still publicly desirable) work and exhibition from scratch.

94.     Put simply, despite their prior specific awareness of not only Munro, Munro's works and exhibitions, the Munro Marks and Munro Trade Dress, and Munro's associated methodologies but also of their failure to secure Munro's approval for and agreement to their project, these well-funded, sophisticated Fortune 500 Defendants and their large, hand-picked advertising agency nevertheless knowingly appropriated for their own use and based a multi-million dollar, consumer-oriented branding, publicity, and sales campaign for a national apparel



retailer on unauthorized, confusingly similar knock-offs of world-renowned artist Munro's famous acclaimed signature works, marks, trade dress, and methods.

95.     Published interviews, press releases, and project photos show top Defendant executives responsible for the *lucy*® brand and myriad Mono personnel to be deeply involved throughout this ill-conceived, wrongful project and in the decisions facilitating it.

96.     Defendants have unjustly and wrongfully benefited from their and their agent Mono's activities alleged herein and Munro has been substantially harmed by those activities.

97.     Via their unauthorized use of the Munro Marks, Munro Trade Dress, associated goodwill, Munro's methodologies, and other materials obtained under promises of confidentiality, Defendants and their agent Mono have (among other things):

- Obtained, exploited, and used Munro materials under false pretenses and for competitive purposes, generating immense publicity and business revenues for Defendants, Mono, and the *lucy*® brand, stores, and apparel in the process.

- Appropriated Munro's resources, creative skills, and efforts to make and launch for competitive business and promotional purposes their own confusingly similar imitation of Munro's acclaimed signature *Forest of Light*™ and *Field of Light*® works and their inherent, distinctive, and famous trade dress.

- Adopted and used the distinctive Munro Trade Dress and the confusingly similar "Light Forest" moniker for commercial promotions and offerings competitive to Munro's activities and endeavors associated with Munro's *Forest of Light*™ and *Field of Light*® works.

- Commercially affiliated the *lucy*® brand, stores, and merchandise with Munro, with Munro's *Forest of Light*™ and *Field of Light*® works, and with the Munro Marks and Munro Trade Dress via extensive local, national, and online promotion of the *Light Forest* exhibition via the associated *Light Forest* Multimedia Campaign, which visibly derived from, imitated, and appropriated Munro's *Forest of Light*™ and *Field of Light*® works, marks, trade dress, associated goodwill, and exhibition and promotional methodologies.

- Saturated the New England market (and online and social media) with promotions for and drew attendees and publicity to the competitive knock-off *Light Forest* exhibition, diminished the ability of regional exhibitors and public spaces to draw

24



attendees or interest in and reduced demand for a subsequent Munro exhibition in that geographic region, and damaged and usurped prospective Munro business relationships and opportunities to exhibit *Forest of Light*™ and *Field of Light*® and to generate publicity, attendance, fees, private sales, follow-on engagements, and specialty commissions, particularly in and around the New England area.

- Exploited Munro's *Forest of Light*™ and *Field of Light*® and Munro's associated efforts, marks, and trade dress via a series of advertisements, videos, television commercials, websites, and in-store displays and an ongoing buzz marketing and social media campaign that centrally and thematically featured and used Defendants' *Forest of Light*™ and *Field of Light*®-derived "Light Forest" to promote Defendants' *lucy*® brand and spur sales of their merchandise and apparel.

98.     As a result of Defendants' and Mono's activities described herein, Munro's efforts, Munro's acclaimed signature works, and Munro's famous trade dress and trademarks were appropriated, imitated, diluted, blurred, and tarnished by Defendants and their agent Mono and Munro was deprived and usurped of significant opportunities, including for exhibition and promotion of his works.

99.     As a direct consequence of their wrongful and unlawful acts, Defendants and Mono also obtained and unjustly benefited from hundreds of millions of valuable PR impressions, social media buzz, web traffic, and publicity. Extensive, valuable publicity that equitably and properly should have been received by or directed toward Munro and the Munro works was instead directed toward Defendants and Mono, who received millions of dollars in associated sales revenues as a result.

100.    Defendants' and their agent Mono's actions have harmed and continue to harm to Munro. Munro has suffered significant economic and non-economic harm, including stress and anguish, as a consequence of Defendants' and their agent Mono's wrongful acts.

101.    Defendants' and their agents' harmful activities are ongoing and will continue unless enjoined by this Court. Indeed, Defendants' *Light Forest* Multimedia Campaign remains publicly available, is ongoing, and continues to inflict advertising and other injuries on Munro.



## Count I
### Fraud & Misrepresentation

102.   Munro re-alleges the above paragraphs.

103.   Defendants (and their agents) made false and fraudulent statements and promises to Munro, including via Munro's Austin-based representative and that they would maintain the confidentiality of materials and information that Munro provided to them on the *Field of Light*® and *Forest of Light*™ works and their exhibition.

104.   Defendants (and their agents) made the statements and promises intending and with an expectation that Munro and Munro's representatives rely on them, which they did.

105.   The statements and promises were knowingly false when made or were made with reckless disregard of their falsity. On information and belief, Defendants and their agents did not intend to maintain the confidentiality of the materials and information that Munro provided.

106.   Contrary to their promise, Defendants (and their agents) did not maintain the confidentiality of materials and information that Munro provided and, on information and belief, instead shared them and their contents with others and used the materials and the information contained therein to facilitate the creation, design, production, and promotion of the competitive *Light Forest* exhibition and associated Multimedia Campaign.

107.   The fraud was inherently undiscoverable.

108.   Munro suffered injury and harm as a direct and proximate result of this fraud.

109.   Munro seeks to recover all damages and other relief to which Munro is entitled for Defendants' fraud.

## Count II
### Tortious Interference with and Usurpation
### of Prospective Business Opportunities and Relationships

110.   Munro re-alleges the above paragraphs.



111.    Munro had reasonable probabilities of prospective business opportunities to stage a large-scale, public exhibition of Munro works, including *Field of Light*® and/or *Forest of Light*™, in the Boson vicinity and reasonable probabilities of prospective business relationships with the City of Boston, the Boston Mayor's office, other local public officials, and affiliated entities and arts organizations.

112.    Defendants and their agent Mono were aware of Munro's prospective relationships and opportunities, which Mono was informed of during discussions with Munro's Austin-based representative.

113.    On information and belief, Defendants and their agents wrongfully, intentionally, willfully, and without justification interfered with and usurped these prospective business opportunities and relationships, including by contacting, soliciting, and presenting area officials with proposals for their alternative, self-financed, knock-off *Light Forest* exhibition and associated Multimedia Campaign, thereby foreseeably inducing and causing co-parties to discontinue discussions with Munro regarding a prospective exhibition.

114.    On information and belief, Defendants usurped Munro's exhibition opportunity to launch their competitive, knock-off *Light Forest* exhibition in Munro's place.

115.    The interferences and usurpations directly and proximately caused Munro injuries and damages and unjustly and inequitably benefited Defendants.

116.    On information and belief, as a direct, proximate, and reasonably foreseeable result, Munro lost the prospective opportunity for a large-scale exhibition of his works in a major metropolitan area and the valuable commensurate publicity, engagement, specialty commissions, private sales, revenues, and momentum for follow-on exhibitions regularly generated from public exhibitions of Munro's large-scale, immersive, light-based works.

27



117.    Munro suffered actual damage or loss as a result of these wrongful interferences, including the lost benefits, fees, and publicity that would have accrued, lost revenues and profits from reasonably projected private sales and specially-commissioned works, and other economic and non-economic damages.

118.    Munro seeks to recover all damages and other relief to which Munro is entitled for Defendants' tortious interferences with and usurpations of Munro's prospective business opportunities and relationships and all benefits unjustly conferred upon or received by Defendants.

### Count III
### Common Law Misappropriation

119.    Munro re-alleges the above paragraphs.

120.    Munro's creation, exhibition, and promotion of the Munro works, including *Field of Light*® and *Forest of Light*™, is a sizable component of Munro's endeavors and business.

121.    As a provider of large-scale, light-based exhibitions, Defendants and their agent Mono directly compete with Munro for limited opportunities, spaces, and venues for the public exhibition of large-scale, immersive works.

122.    Munro expended substantial time, effort, labor, money, and other resources conceiving, creating, developing, designing, making, promoting, displaying, and exhibiting the *Field of Light*® and *Forest of Light*™ works and developing and refining the associated exhibition processes and promotional models and methods.

123.    To circumvent similar costs, impediments, delays, and potential risks and uncertainties associated with attempts to conceive and develop a publicly-desired exhibition from scratch, Defendants and Mono appropriated in whole or in part significant aspects and creative features of Munro's *Field of Light*® and *Forest of Light*™ works and related exhibition

28



processes and promotional models and methods for their competitive, knock-off *Light Forest* exhibition and associated Multimedia Campaign.

124.   Defendants and Mono have thus inequitably and unjustly obtained a free ride on and benefited from Munro's prior efforts, which facilitated and allowed them to conduct their *Light Forest* exhibition, craft their *Light Forest* Multimedia Campaign that exploits the exhibition, and market their their *lucy*® apparel and stores under their campaign and in connection with their exhibition.

125.   Defendants' and Mono's conduct and activities violate the misappropriation doctrine announced by the U.S. Supreme Court in <u>Int'l News Service v. Associated Press</u>, 248 U.S. 215 (1918) and as followed by <u>U.S. Sporting Products, Inc. v. Johnny Stewart Game Calls, Inc.</u>, 865 S.W. 2d 214 (Texas Ct. App., 10th Dist. 1993).

126.   Munro suffered injury and harm as a direct and proximate result of these misappropriations.

127.   Munro seeks to recover all damages and other relief to which Munro is entitled for Defendants' misappropriation.

### Counts IV & V
### Common Law Trademark and Trade Dress Infringement

128.   Munro re-alleges the above paragraphs.

129.   Munro owns and enjoys common law rights in Texas and throughout the United States in and to the Munro Marks and Munro Trade Dress used in connection with Munro's works and offerings, including the *Field of Light*® and *Forest of Light*™ marks and the unique, signature, and acclaimed Munro trade dress reflected in those two named works.



130.    The Munro Marks, including the *Forest of Light*™ mark, are inherently distinctive or have achieved distinctiveness through secondary meaning so that the relevant consuming public associates the Munro Marks with Munro and Munro's works.

131.    The Munro Trade Dress exemplified in the *Field of Light*® and *Forest of Light*™ works consists of non-functional features and design elements (a) that are inherently distinctive or have achieved distinctiveness through secondary meaning so that the relevant consuming public associates the Munro Trade Dress with Munro and Munro's works, and (b) that give the Munro Trade Dress associated with Munro's *Field of Light*® and *Forest of Light*™ works and with Munro a particular (and highly acclaimed) overall look, feel, and appearance. A 2012 *Washington Post* article on Munro's Longwood Gardens exhibit notably acknowledged and described it as a "recurring motif of lights on stalks" and Longwood's director lauded *Field of Light*® and *Forest of Light*™ as "something far more special than we ever imagined."

132.    As a result of Munro's decades of work, promotional efforts, and exhibitions, millions in the United States and around the globe have appreciated and been astounded by Munro's *Field of Light*® and *Forest of Light*™ works and the signature Munro Trade Dress inherent in those works. The widespread public recognition and association of the signature trade dress with Munro and its enviable ability to draw interest and attendees are evident. As the *Washington Post* noted, with little advertising Munro's 2012 Longwood Gardens exhibition of *Field of Light*® and *Forest of Light*™ drew over 300,000 visitors to the Gardens and boosted attendance and revenues by 50%.

133.    Defendants' use of the confusingly similar "Light Forest" moniker and distinctive combination of features and elements of the Munro Trade Dress in connection with their *Light Forest* exhibition, their *Light Forest* Multimedia Campaign, and their branding initiatives,



promotion, and sale of goods and products thereunder has and is likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of the Defendants and their offerings with Munro and/or as to the identity, origin, sponsorship or approval of Defendants' *Light Forest* exhibition(s), *Light Forest* Multimedia Campaign and associated sites, *lucy*® Activewear retail stores and online outlets, and *lucy*® apparel such that the public will be likely to associate or have associated such offerings with Munro.

134.   On information and belief, the Defendants' and Mono's unauthorized use of the Munro Trade Dress, the *Forest of Light*™ mark, and confusingly similar imitations thereof is likely to and did: (a) cause confusion, mistake and deception; (b) cause the public to erroneously believe that Defendants' offerings are the same as Munro's offerings or that Defendants or their offerings are authorized, sponsored, or approved by Munro or are affiliated, connected or associated with or in some way related to Munro; and (c) result in the Defendants unfairly benefiting and profiting from the reputation of Munro, the Munro works, the Munro Marks, and the Munro Trade Dress all to the substantial and irreparable injury of the public, Munro, the Munro Trade Dress, the *Forest of Light*™ mark, and the substantial goodwill represented by such trade dress and mark.

135.   This confusion causes irreparable harm to Munro and weakens the distinctive qualities of the Munro Trade Dress and the *Forest of Light*™ mark.

136.   On information and belief, the Defendants and Mono adopted and used the Munro Trade Dress and the *Forest of Light*™ mark while cognizant of Munro's history of prior use of the Munro Trade Dress and the *Forest of Light*™ mark. The Defendants' and their agents' activities were willful acts in derogation of Munro's rights.

31



137.    On information and belief, the Defendants' conduct was commenced in spite of their knowledge that any unauthorized use of Munro's name, the Munro Trade Dress, the *Forest of Light*™ mark, or any reproductions, counterfeits, copies, or colorable imitations of such trade dress, names and/or marks are violations of Munro 's rights.

138.    On information and belief, the Defendants and their agent Mono continue to knowingly and willfully capitalize on the good name, reputation, and goodwill of Munro and use the Munro Trade Dress and the *Forest of Light*™ mark and confusingly similar imitations thereof without permission or authority of Munro, with knowledge of Munro's protectable rights, and in manifest violation of Munro's rights.

139.    On information and belief, the Defendants' and their agent Mono's acts were knowing, willful, and malicious.

140.    On information and belief, the Defendants' (and agent Mono's) conduct constitutes willful and intentional infringement of the Munro Trade Dress and the *Forest of Light*™ mark and was taken with conscious disregard of Munro's rights.

141.    On information and belief, the Defendants and Mono have acted with reckless disregard for Munro's rights or were willfully blind in connection with their unlawful activities.

142.    On information and belief, the Defendants and Mono have been unjustly enriched by illegally using and misappropriating Munro's intellectual property for their own financial gain and have unfairly benefited and profited from usurping Munro's outstanding reputation and previous efforts expended promoting, exhibiting, and publicizing the Munro Trade Dress and the *Forest of Light*™ mark and their associated works.



143.    Munro has no control over the nature and quality of the products marketed or sold or the events or brands promoted by the Defendants or Mono bearing or under colorable imitations and infringements of the Munro Trade Dress and the *Forest of Light*™ mark.

144.    Defendants' activities constitute common law trademark infringement and trade dress infringement, including under the laws of the State of Texas, and have harmed Munro.

145.    Defendants and their agents acted in bad faith and with actual knowledge of the famous Munro Marks, including specifically *Forest of Light*™, and the famous and acclaimed Munro Trade Dress.

146.    Munro is entitled to recover all damages resulting from the infringements plus Defendants' unjust benefits and gross profits on sales made or received under and during the period of the infringements (including on all sales of *lucy*® apparel for the duration of the *Light Forest* Multimedia Campaign).

147.    Defendants' infringement will continue unless enjoined by this Court.

148.    Munro has no adequate remedy at law.

**Count VI & VII**
**False Designation of Origin and**
**Unfair Competition under 15 U.S.C. § 1125(a)**

149.    Munro re-alleges the above paragraphs.

150.    Defendants' (and Mono's) use of the term "Light Forest" and combination of distinctive features and elements of the Munro Trade Dress into their *Light Forest* exhibition and associated *Light Forest* Multimedia Campaign and related promotional materials constitutes a false designation of origin which is likely to deceive and, upon information and belief, has deceived the public, customers, and prospective customers into believing that the Defendants' offerings are associated with, authorized by, or those of Munro, and as a consequence, are likely



to divert and have diverted customers (including but not limited to curators, exhibitors, and attendees) away from Munro.

151.    On information and belief, the Defendants and their agent Mono continue to attempt to capitalize on the good name, reputation, and goodwill of Munro.

152.    The Defendants' acts alleged herein constitute use of a word, term, name, symbol, and a false designation of origin which is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of the Defendants and Defendants' *Light Forest* exhibition(s), *Light Forest* Multimedia Campaign (and associated sites), *lucy*® Activewear stores and outlets, and *lucy*® apparel products with Munro, or as to the origin, sponsorship, or approval of the Defendants' goods, services, and commercial activities by Munro, in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

153.    The Defendants' acts misrepresent the nature, characteristics, qualities, or origin of the Defendants' goods, services, or commercial activities in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B).

154.    The Defendants' conduct has caused and if not enjoined will continue to cause irreparable damage to Munro, the Munro Trade Dress, the Munro Marks (including the *Forest of Light*™ mark), and Munro's trademark and trade dress rights, good name, reputation and goodwill in a manner that cannot be fully compensated by monetary damages.

155.    Munro is entitled to recover Defendants' gross profits (including on all sales of *lucy*® apparel for the duration of the Multimedia Campaign), treble Munro's damages and detriment, and the cost of the action under 15 U.S.C. § 1117(a) and to have all offending articles and their means of manufacture turned over and destroyed under 15 U.S.C. § 1118.



156.    Because this is an exceptional case, Munro is entitled to an award of reasonable attorneys fees.

157.    The Defendants' false designation of origin and unfair competition will continue unless enjoined by this Court.

158.    Munro has no adequate remedy at law.

### Count VIII & IX
### Trademark & Trade Dress Dilution Under 15 U.S.C. § 1125(c)

159.    Munro re-alleges the above paragraphs.

160.    Munro's *Forest of Light*™ name and mark became famous before any Defendant's or their agent Mono's adoption or use of that or any confusingly similar term such as "Light Forest." The Munro Trade Dress associated with the *Field of Light*® and *Forest of Light*™ works and with Munro became famous before any Defendant's or their agent Mono's use or adoption of that or any similar trade dress elements or overall look, feel, and appearance.

161.    Defendants' conduct, including the adoption and use of the "Light Forest" moniker and signature Munro Trade Dress elements, has reduced the capacity of Munro's famous *Forest of Light*™ name and mark and the Munro Trade Dress to identify and distinguish Munro's works, exhibitions, promotions, and sanctioned events and merchandise.

162.    Defendants' (and Mono's) acts described herein constitute dilution of Munro's famous *Forest of Light*™ name and mark and of the famous Munro Trade Dress in violation of the Lanham Act, 15 U.S.C. § 1125(c). Defendants' and their agent Mono's activities constitute dilution both by blurring and by tarnishment of Munro's famous *Forest of Light*™ name and mark and of the famous Munro Trade Dress.



163.    On information and belief, Defendants and their agent Mono willfully intended to trade on Munro's reputation and to cause dilution of Munro's famous *Forest of Light*™ name and mark and of the famous Munro Trade Dress.

164.    Munro is entitled to injunctive relief against Defendants under 15 U.S.C. § 1125(c)(1) and to all additional remedies allowed under 15 U.S.C. § 1125(c)(5).

165.    Under 15 U.S.C. § 1125(c)(5) and because Defendants acted inequitably, deceptively, willfully, and in bad faith, Munro is entitled to recover Defendants' gross profits (including on all sales of *lucy*® apparel for the duration of the Multimedia Campaign), treble Munro's damages and detriment, and the cost of the action under 15 U.S.C. § 1117(a) and to have all offending articles and their means of manufacture turned over and destroyed under 15 U.S.C. § 1118.

166.    Because this is an exceptional case, Munro is entitled to an award of reasonable attorneys fees.

167.    The Defendants' conduct has caused and, if not enjoined, will continue to cause, irreparable damage to Munro's famous *Forest of Light*™ name and mark, the Munro Trade Dress, and Munro's trademark and trade dress rights, good name, reputation, and goodwill in manners that cannot be calculated or compensated by monetary damages.

168.    The Defendants' dilutive activities will continue unless enjoined by this Court.

169.    Munro has no adequate remedy at law.

### Count X & XI
### Injury to Business Reputation and Dilution of Famous
### Trademarks & Trade Dress under Tex. Bus. & Com. Code § 16.103

170.    Munro re-alleges the above paragraphs.

36



171.    The famous Munro Trade Dress and *Forest of Light*™ mark have distinctive qualities, which have become associated in this State and elsewhere with Munro and Munro's standards of high quality.

172.    Through the Defendants' and their agent Mono's use of the Munro Trade Dress and *Forest of Light*™ mark and confusingly similar imitations thereof, there exists a likelihood of injury to Munro's business reputation and a likelihood of dilution of the distinctive qualities of the famous Munro Trade Dress and *Forest of Light*™ mark in violation of Tex. Bus. & Com. Code Ann. § 16.103.

173.    The Defendants' commercial use of the Munro Trade Dress and *Forest of Light*™ mark or colorable imitations thereof in connection with their exhibition, merchandise, brands, and stores and in their advertising and promotional materials began after the Munro Trade Dress and *Forest of Light*™ mark became famous and has and is diluting the distinctive quality of the Munro Trade Dress and *Forest of Light*™ mark and injuring Munro's good name.

174.    Defendants' (an their agent Mono's) activities constitute injury to business reputation and dilution by blurring and tarnishment under Texas law. See TEX. BUS. & COM. CODE § 16.103.

175.    Munro is entitled to injunctive relief against Defendants under TEX. BUS. & COM. CODE § 16.103.

176.    Because Defendants and Mono willfully intended to cause the dilution and acted inequitably, Munro is entitled under § 16.103 to the additional remedies allowed under TEX. BUS. & COM. CODE § 16.104, including all of Defendants' profits derived from and Munro's damages resulting from Defendants' wrongful acts and to the destruction of all imitations in or under the control of Defendants.

37



177.    Under TEX. BUS. & COM. CODE § 16.104 and because Defendants (and Mono) acted inequitably, deceptively, willfully, in bad faith, and with knowledge of the Munro Trade Dress and the *Forest of Light*™ mark, Munro is entitled to an award of three times the amount of Defendants' gross profits (including on all sales of *lucy*® apparel for the duration of the Multimedia Campaign) and Munro's damages and detriment, plus to also recover Munro's reasonable attorney's fees.

178.    Defendants (and agent Mono) will continue injuring Munro's business reputation and diluting Munro Trade Dress and the *Forest of Light*™ mark unless enjoined by this Court.

179.    The Defendants' conduct has caused and, if not enjoined, will continue to cause, irreparable damage to Munro's *Forest of Light*™ name and mark, the Munro Trade Dress, and Munro's trademark and trade dress rights, good name, reputation, and goodwill in a manner that cannot be calculated or compensated by monetary damages.

180.    Munro has no adequate remedy at law.

### Count XII
### Common Law Unfair Competition

181.    Munro re-alleges the above paragraphs.

182.    Defendants have used, infringed, and diluted the Munro Marks and Munro Trade Dress without authorization; misappropriated Munro's time, labor, skills, and efforts and the fruits thereof for self-serving competitive purposes and advantages; tortiously interfered with and usurped Munro's business opportunities and relationships; and acted dishonestly, unethically, and fraudulently towards Munro, including on competitive matters.

183.    Defendants actions maliciously interfered with Munro's ability to properly and fully conduct Munro's affairs and business endeavors in an unimpeded fashion.

38



184.   Defendants are guilty of unfair competition and other unfair trade practices in violation of the Texas common law of unfair competition.

185.   Munro suffered injury and harm as a direct and proximate result of this unfair competition.

186.   Munro seeks to recover all damages and other relief, including unjust enrichment, to which Munro is entitled for Defendants' unfair competition.

## Count XIII
## Conspiracy

187.   Munro re-alleges the above paragraphs.

188.   Defendants' and Mono's actions and activities alleged herein constitute a combination to accomplish an unlawful purpose or a lawful purpose by an unlawful means, which was agreed to by Defendants and Mono, thereby constituting a conspiracy.

189.   Each and every Defendant is equally and vicariously liable to Munro for the damages proximately caused by the actions described herein.

## Count XIV
## Unjust Enrichment

190.   Munro re-alleges the above paragraphs.

191.   Defendants have directly or indirectly received funds and other valuable benefits to which they were not rightfully or equitably entitled as a result of the alleged actions.

192.   Defendants inequitably profited and benefited from their adoption and use of imitations of the Munro Marks and Munro Trade Dress, misappropriation of Munro's efforts, usurpations of and interferences with Munro's business opportunities, and fraudulent and deceptive conduct.

39



193.     Defendants have been unjustly enriched and have inequitably benefited and profited and as a direct and proximate result of Defendants' and their agents' actions, conduct, statements, representations, omissions, promises, and breaches described herein.

194.     It would be inequitable and unjust for Defendants to retain these profits and benefits, which Defendants wrongfully obtained at Munro's detriment.

195.     Munro is equitably entitled to recover and be awarded a sum amounting to the value of all inequitable or unjust benefits, profits, or enrichment obtained by these Defendants as a result of their actionable activities alleged herein.

**Count XV**
**Constructive Trust**

196.     Munro re-alleges the above paragraphs.

197.     To protect Munro's rightful interests, Munro is entitled to and the Defendants' and their agents' actions necessitate imposition of a constructive trust over all profits, funds, and proceeds received or generated by Defendants in connection with their use of imitations of the Munro Marks and Munro Trade Dress, misappropriation of Munro's efforts, usurpations and interferences with Munro's business opportunities, fraudulent and deceptive conduct, and other wrongful conduct alleged herein.

198.     Munro requests that a constructive trust be equitably imposed in favor of Munro over all such sums and benefits and any proceeds thereof unjustly obtained or received by the Defendants (including over all sales of *lucy*® apparel during the duration of the *Light Forest* exhibition and *Light Forest* Multimedia Campaign and the proceeds thereof).

199.     To prevent further immediate and irreparable harm, the Court should immediately enjoin any disposition by Defendants of any such funds.

40

**Count XVI**
**Accounting**

200.    Munro re-alleges the above paragraphs.

201.    Munro is entitled to an accounting from Defendants.

**Willfulness**

202.    Defendants' and their agent Mono's actions, conduct, statements, representations, omissions, promises, breaches, and tortious actions described herein have been intentional and willful in nature.

203.    Defendants' and their agent Mono's actions, conduct, statements, representations, omissions, promises, breaches, and tortious actions described herein were taken with knowledge of Munro's prospective business opportunities and rights (including rights in and to the Munro Marks and Munro Trade Dress) and in malicious disregard of such rights.

**Damages & Exemplary Damages**

204.    Munro has been damaged and suffered injuries as a direct and proximate result of Defendants' and their agents' actions, conduct, statements, representations, omissions, promises, breaches, and tortious activities described herein.

205.    Munro has suffered actual, direct, consequential, incidental, nominal, presumed, general, special, economic, non-economic, and other damages as alleged herein.

206.    Munro is entitled to recover against Defendants for these damages and injuries.

207.    Munro is also entitled to recover exemplary damages from Defendant on its claims herein as allowable under the Chapter 41 of Texas' Damages Act. See, e.g, Tex. Civ. Prac. & Rem. Code § 41.008. Defendants' (and their agents') actions were committed with conscious indifference and malice toward Munro, were the result of actual fraud perpetuated by

41



them on Munro, and Defendants and their agents had specific intent to cause substantial injury or harm to Munro. Munro is entitled to recover as exemplary damages twice the amount of economic damages, plus any noneconomic damages (up to $750,000). Because Defendants' and their agents' conduct meets the parameters of Tex. Civ. Prac. & Rem. Code § 41.008(c)(13), et seq., no cap applies to the exemplary damages awardable to Munro on economic and non-economic damages and a jury is entitled to impose a suitable exemplary damages award within its discretion.

### Injunctive Relief & Specific Performance

208.    Munro is entitled to specific performance and injunctive relief on matters and claims alleged herein, for which there is no adequate recovery as a matter of law.

209.    Defendants' wrongful conduct caused and is causing Munro irreparable harm and will continue unless enjoined by this Court.

210.    Munro is entitled to and requests temporary, preliminary, and permanent injunctive relief ordering Defendants and their agents to immediately and permanently: (a) cease use of any marks confusingly similar to or dilutive of Munro's Marks, including the terms *Forest of Light*™, *Field of Light*®, "Light Forest" or any substantially similar monikers, and turn over or destroy all articles or advertising bearing any confusingly similar or dilutive marks; (b) cease use of any trade dress confusingly similar to or dilutive of Munro's Trade Dress, including uses exemplified in the *Light Forest* exhibition and Multimedia Campaign or others imitating Munro's *Forest of Light*™ or *Field of Light*® works, and turn over or destroy all articles or advertising incorporating  or derived from the exploitation of any confusingly similar or dilutive trade dress; (c) discontinue the *Light Forest* Multimedia Campaign, turn over, destroy, and/or take down all associated images, graphics, photos, and copy in any catalogs or print materials or

42



from any web, online, mobile or social media sites or services under their control, cancel any

planned *Light Forest* exhibitions, and remove any in-store replicas; (d) return and destroy all

copies of all materials and information received from Munro under promises of confidentiality;

and (e) cease any branding, advertising, or merchandising operations or competitive promotional

or exhibition activities that utilized any such information or above-identified materials, marks, or

trade dress to unfairly compete with Munro's exhibition or promotion of Munro's *Forest of*

*Light*™, *Field of Light*™, or other works or Munro's related business activities.

211.    Munro requests that Defendants be ordered pursuant to the Lanham Act and

Texas law to turn over for destruction all offending goods, articles, advertising, reproductions, or

colorable imitations and all means and equipment that were used to make them. See 15 U.S.C. §

1118; Tex. Bus. & Com. Code Ch. 16.

### Costs & Attorneys Fees

212.    Munro made written demand on Defendants to discontinue the complained of

conduct and activities and take remedial action, but they refused. The written demand was made

more than thirty (30) days before the filing of this Petition.

213.    As a result of Defendants' actions, Munro retained counsel to recover and seeks

reimbursement for its reasonable costs and attorneys' fees.

214.    Defendants' and their agents' actions, including their infringement, false

designation of origins, and dilution of the Munro Marks and the Munro Trade Dress, and

associated injury to Munro's business reputation, were committed willfully, in bad faith, and

with knowledge of Munro's rights, the Munro Marks, the Munro Trade Dress, and Munro's

*Forest of Light*™ and *Field of Light*® works and exhibitions. Accordingly, this action constitutes

an exceptional case and Munro is entitled to recover reasonable costs and attorneys' fees. E.g.,

43

15 U.S.C. §§ 1117(a)(3), 1125(a), 1125(c); Tex. Bus. Com. Code §§ 16.103 - .104.

### Disclaimer

215.    For the avoidance of doubt, all of Munro's allegations and claims are pleaded in the alternative to the extent of any inconsistency.

### Prayer

Accordingly, Munro asks to be awarded judgment against Defendants for the following:

a.      all damages, exemplary damages, enhanced damages, and other legally permissible damages or recoveries allowed by law, statute, or equity;

b.      an accounting and recovery of Defendants' gross profits on *lucy*® apparel sales and all amounts by which Defendants have been unjustly enriched or benefited;

c.      specific performance, declaratory relief, and temporary, preliminary and permanent injunctive relief as alleged;

d.      seizure and destruction of any offending articles, advertising, and the equipment used to make them;

e.      imposition of a constructive trust and other equitable remedies;

f.      pre-judgment and post-judgment interest at the maximum legal rate;

g.      costs and attorneys' fees; and,

h.      all other relief to which Munro may be entitled or as the court may deem just, equitable, necessary, proper or appropriate under the circumstances.

### Jury Demand

Munro requests a jury trial under Tex. R. Civ. P. 216 and Tex. Gov. Code § 51.604(a) on all issues so triable in this action and has tendered the appropriate fee.



Respectfully submitted,

LAW OFFICES OF CARL F. SCHWENKER

By: /s/ *Carl F. Schwenker*
Carl F. Schwenker
Texas Bar No. 00788374
The Haehnel Building
1101 East 11th Street
Austin, Texas 78702
Tel. (512) 480-8427
Fax (512) 857-1294
cfslaw@swbell.net

ATTORNEYS FOR BRUCE MUNRO
AND BRUCE MUNRO STUDIO

## CERTIFICATE OF SERVICE

I certify that on the __28th__ day of __August__, 2015, a true and correct copy of the foregoing document was served via (check applicable box): √ Email, ☐ U.S. First Class Mail, sufficient postage prepaid, ☐ Certified Mail, Return Receipt Requested, ☐ hand delivery, ☐ fax, on the following:

Christopher Turk
VF Intellectual Property Services, Inc.
3411 Silverside Road
Wilmington, Delaware 19810
Phone: (302) 477-3930 ext. 232
Email: chris_turk@vfc.com

*Attorney for Defendants*

Courtesy copy to:
Lora M. Friedemann
Fredrikson & Byron, P.A.
200 South Sixth Street, Suite 4000
Minneapolis, MN 55402-1425
Email: lfriedemann@fredlaw.com

By: /s/ *Carl F. Schwenker*
Carl F. Schwenker

45



**I, VELVA L. PRICE, District Clerk,**
Travis County, Texas, do hereby certify that this is
a true and correct copy as same appears of
record in my office. Witness my hand and seal of
office on_____ 9/ 1 /2015



**VELVA L. PRICE**
**DISTRICT CLERK**
**By Deputy:**