# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| BRUCE MUNRO and BRUCE MUNRO STUDIO, | Civil No. 16-79 (JRT/KMM) |
| Plaintiffs, | |
| v. | **MEMORANDUM OPINION AND ORDER GRANTING MOTION TO DISMISS** |
| LUCY ACTIVEWEAR, INC., LUCY APPAREL, LLC, VF OUTDOOR, INC., and VF CORPORATION, | |
| Defendants. | |

Carl F. Schwenker, **LAW OFFICES OF CARL F. SCHWENKER**, 1101 East Eleventh Street, Austin, TX  78702; Steven L. Theesfeld, **YOST & BAILL, LLP**, 220 South Sixth Street, Suite 2050, Minneapolis, MN 55402, for plaintiffs.

Lora Mitchell Friedemann and Nikola L. Datzov, **FREDRIKSON & BYRON, PA**, 200 South Sixth Street, Suite 4000, Minneapolis, MN 55402, for defendants.

Plaintiffs Bruce Munro and Bruce Munro Studio (collectively "Munro") bring this action alleging trademark, trade dress, and various state law claims against Defendants Lucy Activewear, Inc., Lucy Apparel, LLC, VF Outdoor, Inc., and VF Corporation. Munro's claims stem from a light display Defendants created in Boston and used in Lucy Activewear marketing campaigns nationally, and which Munro alleges copied his work. Defendants move to dismiss all claims, and Munro moves to amend his complaint. Because the Court finds that, even considering Munro's amended complaint, each of Munro's claims is either preempted by the Copyright Act or not sufficiently pleaded, the Court will grant Defendants' motion to dismiss and deny Munro's motion to amend his

complaint as futile.   However, the Court will dismiss Munro's fraud claim and his trademark claim, to the extent it is based on the similarity in name between the light displays, without prejudice because he could theoretically state a claim on those bases.

## BACKGROUND[1]

Munro alleges that he is "a globally acclaimed and internationally recognized artist" and that he is "best known for large-scale, immersive, light-based works, sculptures, installations, and exhibitions."  (Notice of Removal, Ex. D ("Compl.") ¶ 31, Sept. 2, 2015, Docket No. 1; *see also* Pls.' Ex. Index, Ex. 1 ("Am. Compl.") ¶¶ 1, 13, Mar. 10, 2016, Docket No. 51.)  He has sold and exhibited his works in the United States and Europe, and Field of Light and Forest of Light are his best-known works.  (Compl. ¶¶ 34, 38-39; Am. Compl. ¶¶ 14, 16, 18.)  Based on those works, Munro claims trade dress in "large-scale, immersive, light-based design utilizing arrays of thousands of short, end-lighted stems with variably lit bulbs traversably laid out upon a predominantly green space."  (Compl. ¶ 82.)[2]

Defendants Lucy Activewear, Inc., Lucy Apparel, LLC, VF Outdoor Inc., and VF Corp., are all involved in the Lucy brand and Lucy Activewear products.  (Compl. ¶¶ 14-18.)  Munro's amended complaint would keep as a defendant VF Outdoor Inc., the

---

[1] For the purposes of reciting the factual allegations, the Court cites both the complaint, (Notice of Removal, Ex. D ("Compl."), Sept. 2, 2015, Docket No. 1), and the proposed amended complaint, (Pls.' Ex. Index, Ex. 1 ("Am. Compl."), Mar. 10, 2016, Docket No. 51), because, as discussed further below, the Court will consider whether Munro has stated a claim under either complaint.

[2] Munro's amended complaint is somewhat reworded, but substantially similar, claiming trade dress for works including the following elements: "(1) an outdoor exhibit; (2) of large scale; (3) a light-based design; (4) thousands of short, end-lighted stems or 'stalks'; (5) in an array; (6) arranged upon a predominantly green space; (7) positioned off-kilter or splayed from the perpendicular; and (8) topped with variably lit bulbs."  (Am. Compl. ¶ 22.)

subsidiary of VF Corporation allegedly responsible for Lucy's day-to-day operations, but would replace the rest of the current defendants with Mono Advertising, LLC ("Mono"), the company that managed the advertising campaign at issue.  (Am. Compl. ¶¶ 49-52.)

Munro alleges that Mono contacted him through its employee Melissa Rothman and proposed a Lucy advertising and promotional campaign involving Munro's work. (Compl. ¶¶ 62-63; Am. Compl. ¶¶ 54-55.)   Munro alleges that Rothman requested additional information about Munro's prior work, including the Field of Light and Forest of Light exhibitions, such as "attendance figures, achieved online/multi-media traffic, and promotional methods used for the exhibitions," which she agreed to keep confidential. (Compl. ¶ 64; Am. Compl. ¶ 56.)  Munro allegedly disclosed illustrations of his Field of Light and Forest of Light works and marketing and business techniques to promote his works.  (Compl. ¶ 65; Am. Compl. ¶ 57.)   Munro also disclosed to Mono that "public officials in Boston's Mayor's Office of Arts, Tourism & Special Events were also courting and had contacted Munro" about creating a public exhibition in Boston. (Compl. ¶ 66; *see also* Am. Compl. ¶¶ 57-58.)  According to Munro, Rothman and Mono then stopped contacting him, and communications from Boston officials ceased soon thereafter.  (Compl. ¶¶ 67-68; Am. Compl. ¶¶ 59-60.)  Munro assumed that the project was abandoned.  (Compl. ¶ 67; Am. Compl. ¶¶ 62.)

Defendants and Mono in fact launched a Lucy light exhibition and advertising campaign in Boston in October 2013, titled Light Forest.  (Compl. ¶ 75; Am. Compl. ¶¶ 63-64.)   Munro alleges that in making Light Forest, Defendants relied on the confidential information Munro provided about his works, including his marketing methods for an exhibit of that style.  (Compl. ¶¶ 70-71; Am. Compl. ¶ 111.)   Munro

contends that Light Forest copied elements of his prior works, "including but not limited to the large-scale, immersive, light-based design utilizing arrays of thousands of short, end-lighted stems with variably lit bulbs traversably laid out upon a predominantly green space." (Compl. ¶ 82; *see also* Am. Compl. ¶ 65.)   Mono's webpage discussing the exhibit states that the Light Forest was "a unique, interactive light and sound installation that responds to participants' movement," was "larger than a football field[,] and consist[ed] of more than 10,000 movement-activated, solar-powered LED lights." *lucy light forest*, http://mono-1.com/work/lucy-activewear-light-forest (last visited Sept. 21, 2016); (*see also* Am. Compl. ¶ 73 (citing the website).)

The advertising campaign included "national TV and web spots, print, in-store mock-up displays, and extensive experiential, online, and social media promotion and engagement, [and was] an immense success." (Compl. ¶ 77; *see also* Am. Compl. ¶ 70.) According to Munro, Mono has reported the campaign led to more than 100,000 in-person visitors, more than 307 million "PR media impressions," and increased interest and web traffic for Lucy's brand. (Compl. ¶ 77; Am. Compl. 70.) The exhibit remains visible online both to promote the Lucy brand and as an example of Mono's advertising work, and Defendants have suggested they intend to set up another Light Forest in the future. (Compl. ¶ 78; Am. Compl. ¶¶ 72-73.)

Munro alleges that the similar name and elements of the exhibit will confuse attendees and venues seeking exhibits, and they will be led to believe Munro is connected to the exhibit. (Compl. ¶ 132-34; Am. Compl. ¶ 77.) Munro also alleges that Defendants usurped his prospective business opportunity in the Boston area. (Compl. ¶ 111; Am. Compl. ¶ 80.)

Munro filed this action in Texas state court, and Defendants removed on September 2, 2015. (Notice of Removal.) On September 18, 2015, Defendants filed a motion to dismiss for lack of personal jurisdiction, or in the alternative to transfer venue, and a motion to dismiss for failure to state a claim. After a hearing, the court transferred the case to Minnesota on January 14, 2016, so that Mono could be added as a party and because Mono's conduct occurred in Minnesota.

On February 1, 2016, Defendants renewed their motion to dismiss for failure to state a claim, which the prior court dismissed as moot. Munro's 3-page response to this motion primarily requests to amend his complaint, which he argues would avoid many of the issues raised in Defendants' motion to dismiss.[3] (Pls.' Mem. in Opp'n to Mot. to Dismiss ("Pls.' Mem. in Opp'n") at 1-2, Feb. 22, 2016, Docket No. 44.) He also adopts the arguments made in his brief before the Western District of Texas. (*Id.* at 3; Pls.' Combined Resp. to Defs.' Mot. to Dismiss, Oct. 20, 2015, Docket No. 17.)

On March 10, 2016, Munro filed a motion to amend his complaint, stating that doing so would render Defendants' motion to dismiss moot. (Pls.' Mot. for Leave to Amend, Mar. 10, 2016, Docket No. 49.) Both Munro's original complaint and his proposed amended complaint allege the following claims: trademark and trade dress infringement, trademark and trade dress dilution under the Lanham Act, false designation

---

[3] Munro also argues that the motion fails because Defendants failed to meet and confer under Local Rule 7.1 and the "renewed" motion to dismiss is not identical to Defendants' prior motion. (Pls.' Mem. in Opp'n to Mot. to Dismiss ("Pls.' Mem. in Opp'n") at 1-2, Feb. 22, 2016, Docket No. 44.) Because Defendants merely renew their prior motion to dismiss, which was fully briefed before the prior court and only restyled to include Eighth Circuit law, the Court finds no prejudice and will consider the motion to dismiss here. *See Issaenko v. Univ. of Minn.*, No. 13-3605, 2016 WL 1271470, at *5 (D. Minn. Mar. 31, 2016).

of origin and unfair competition under the Lanham Act, misappropriation, fraud, tortious interference with prospective business opportunities, and unfair competition.  Munro's initial complaint also alleged claims titled conspiracy, unjust enrichment, constructive trust, and accounting, but he has abandoned those claims by not including them in his proposed amended complaint, and therefore, the Court will not consider them here.

## ANALYSIS

## I.    MOTION TO AMEND

Faced with Defendants' renewed motion to dismiss, Munro has moved to amend his complaint.  Defendants argue that the Court should deny Munro's motion to amend the complaint because it is futile and demonstrates bad faith.  Under Federal Rule of Civil Procedure 15(a), courts "should freely give leave" to amend "when justice so requires." "A district court may appropriately deny leave to amend 'where there are compelling reasons such as undue delay, bad faith, or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of the amendment.'"  *Moses.com Sec., Inc. v. Comprehensive Software Sys., Inc.*, 406 F.3d 1052, 1065 (8th Cir. 2005) (quoting *Hammer v. City of Osage Beach*, 318 F.3d 832, 844 (8th Cir. 2003)).  The court does not err in denying a motion to amend due to futility where the amended complaint would not survive a motion to dismiss for failure to state a claim.  *Briscoe v. Cty. of St. Louis*, 690 F.3d 1004, 1015 (8th Cir. 2012); *Zutz v. Nelson*, 601 F.3d 842, 850-51 (8th Cir. 2010).  Because the Court finds that Munro

has failed to state a claim even considering his proposed amended complaint, as discussed below, the Court will deny his motion to amend as futile.[4]

## II.    MOTION TO DISMISS

### A.    Standard of Review

In reviewing a motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6), the Court considers all facts alleged in the complaint as true to determine if the complaint states a "claim to relief that is plausible on its face." *Gomez v. Wells Fargo Bank, N.A.*, 676 F.3d 655, 660 (8th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).   To survive a motion to dismiss, a complaint must provide more than "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Ashcroft*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

---

[4] Defendants also argue that the motion to amend should be denied because it is a bad-faith attempt to prolong the litigation.   Defendants point to Munro's failure to provide a useful redline version of his amended complaint – making it more difficult for Defendants and the Court to compare his two complaints – particularly because Defendants warned Munro of the requirement before he filed.   (*See* Decl. of Lora M. Friedemann, Ex. A, Mar. 17, 2016, Docket No. 53.)   Defendants contend that Munro chose to avoid the redline requirement in order to obfuscate, and that the Court should deny the motion on that basis alone.   *See O'Neil v. Simplicity, Inc.*, 574 F.3d 501, 505 (8th Cir. 2009) ("A district court does not abuse its discretion in denying leave to amend where a plaintiff has not followed applicable procedural rules.") Defendants also argue that by failing to address Defendants' already-briefed substantive arguments in favor of dismissal, but repleading many of the same claims without meaningful additional detail, Munro is further delaying litigation and essentially requesting to proceed to a third round of briefing on the same arguments.   *See Brinkman v. Bank of Am., N.A.*, 914 F. Supp. 2d 984, 993 (D. Minn. 2012) (denying motion to amend in part because it demonstrated an attempt to prolong the litigation as long as possible); *Ikeri v. Sallie Mae, Inc.*, No. 13-1943, 2014 WL 4071953, at *2 (D. Minn. Aug. 18, 2014) (denying motion to amend in part because "the claims are nearly identical to those that the magistrate judge previously considered and rejected").   While these actions are potentially troubling, the Court will deny Munro's motion to amend as futile and thus, it need not consider Defendants' arguments regarding bad faith.

alleged." *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility," and therefore must be dismissed. *Id.* (internal quotation marks omitted). Finally, Rule 12(b)(6) "authorizes a court to dismiss a claim on the basis of a dispositive issue of law." *Neitzke v. Williams*, 490 U.S. 319, 326 (1989).

### B.     Trademark and Trade Dress Claims

First, Munro alleges various trademark and trade dress claims against Defendants. Munro brings three types of Lanham Act claims: trademark and trade dress infringement under 15 U.S.C. § 1125(a), trademark and trade dress dilution under 15 U.S.C. § 1125(c), and false designation of origin under 15 U.S.C. § 1125(a), but they are all based on Defendants' use of Munro's style of light display and a similar name both on the exhibit and in later advertising and promotional materials. (*See, e.g.*, Am. Compl. ¶ 84 ("Defendants have used the term 'Light Forest' and the overall look and feel of the Munro Trade Dress' . . . .").) Section 1125(a) provides a remedy against:

> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which –
>
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection or association of such person with another person, or as to origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
>
> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities . . . .

15 U.S.C. § 1125(a).   Essentially, the provision prohibits "passing off," where "a producer misrepresents his own goods or services as someone else's," and "reverse passing off," where "[t]he producer misrepresents someone else's goods or services as his own." *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 27 n.1 (2003). Section 1125(c) allows for an injunction against anyone using a famous "mark or trade name in commerce that is likely to cause dilution by blurring or dilution by garnishment of the famous mark." 15 U.S.C. § 1125(c).

Here, however, Munro is not alleging a typical trademark or trade dress claim – Defendants are not taking Munro's goods and passing them off as their own, or copying Munro's packaging so that customers will buy their goods thinking they are Munro's goods. Instead, Munro essentially argues that copying the look and feel of his light displays and using a similar name would cause confusion – causing the public to think that they were Munro's works or associated with Munro – or give unfair benefits to Defendants based on Munro's work.   (Am. Compl. ¶ 87; Compl. ¶¶ 150, 152.)   He describes his trade dress broadly, including: "(1) an outdoor exhibit; (2) of large scale; (3) a light-based design; (4) thousands of short, end-lighted stems or 'stalks'; (5) in an array; (6) arranged upon a predominantly green space; (7) positioned off-kilter or splayed from the perpendicular; and (8) topped with variably lit bulbs."   (Am. Compl. ¶ 22.)

Courts, however, are "'careful to caution against misuse or over-extension' of trademark and related protections into areas traditionally occupied by patent or copyright." *Dastar Corp.*, 539 U.S. at 34 (quoting *TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 29 (2001)).   Copyright and patent laws are meant to protect against copying the originality and creativity of another, for a certain time and under

certain guidelines, while the Lanham Act and trademark law serve a distinct purpose.  *See id.* at 37.   The Lanham Act "prevent[s] competitors from copying 'a source-identifying mark,' [thereby] 'reduc[ing] the customer's costs of shopping and making purchasing decisions,' and 'help[ing] assure a producer that it (and not an imitating competitor) will reap the financial, reputation-related rewards associated with a desirable product.'"  *Id.* at 34 (quoting *Qualitex Co. v. Jacobson Prods. Co.*, 514 U.S. 159, 163-64 (1995)).   "The Lanham Act – which, unlike the patent and copyright regimes, creates exclusive rights that have no automatic expiration – does not create 'a species of perpetual patent and copyright,' nor does it create 'a cause of action for, in effect, plagiarism – the use of otherwise unprotected works and inventions without attribution.'"  *Kehoe Component Sales Inc. v. Best Lighting Prods., Inc.*, 796 F.3d 576, 588 (6th Cir. 2015) (quoting *Dastar*, 539 U.S. at 33-34, 36, 37).   Rather, the Lanham Act aims to "protect[] consumers from confusion as to source," which does not justify reading the Act "so broadly that it provides a way for inventors to stifle indefinitely the mimicry of items that have been neither patented nor copyrighted."  *Id.* at 589.   "'The right question [under the Lanham Act] is whether the consumer knows who has produced the finished product' even if 'most of the product's economic value came from elsewhere.'"  *Id.* at 589 (quoting *Bretford Mfg., Inc. v. Smith Sys. Mfg. Corp.*, 419 F.3d 576, 581 (7th Cir. 2005)).

Based on these principles, to the extent Munro bases his claim on the similar style of exhibit, including the trade dress described above, his claim fails.  The Lanham Act "'does not protect the content of a creative work of artistic expression' because an 'artist's right in an abstract design or other creative work' is protected by copyright law."  *Ward v. Andrews McMeel Publ'g, LLC*, 963 F. Supp. 2d 222, 235 (S.D.N.Y. 2013)

(quoting *EMI Catalogue P'ship v. Hill, Holliday, Connors, Cosmopulos Inc.*, 228 F.3d 56, 63 (2d Cir. 2000)).  For example, in *Galerie Furstenberg v. Coffaro*, the plaintiff who owned exclusive rights to some of Salvador Dali's drawings and etchings brought trademark claims against individuals that recreated similar works themselves. 697 F. Supp. 1282, 1289-90 (S.D.N.Y. 1988).  The plaintiffs argued that the defendants invoked Dali's distinct style and violated their trademark.  *Id.*  The court interpreted their claim as one for false designation of origin, but found no trademark because the claim would have been "properly brought under the federal copyright, not trademark, statute." *Id.* at 1290.  The court also dismissed the plaintiff's trademark dilution claim because it found no trademark in specific works of visual art by Dali.  *Id.* at 1291; *see also Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*, 58 F.3d 27, 33 (2d Cir. 1995) (noting trade dress law does not "protect an idea, a concept, or a generalized type of appearance," and denying the plaintiff's claim as "effectively seeking protection for an idea or concept – die-cut photographic greeting cards").

Additionally, when dealing with artistic works, courts have been wary to extend trademark protections over works properly the subject of copyright law.  In *Leigh v. Warner Bros.*, the court found that a photographer's famous photograph used on his gallery's promotion materials was not covered under trade dress law, reasoning that the image "strikes us not as a separate and distinct mark **on the good**, but, rather, as the good itself."  212 F.3d 1210, 1218 (11th Cir. 2000) (quoting *Rock & Roll Hall of Fame & Musuem, Inc. v. Gentile Prods.*, 134 F.3d 749, 754 (6th Cir. 1998)).

Similarly, in *RDF Media Ltd. v. Fox Broad. Co.*, the court rejected the plaintiff's attempts to bring trade dress claims based on the similarities between two reality

television shows because the plaintiff sought to establish trade dress in the show itself. 372 F. Supp. 2d 556, 563 (C.D. Cal. 2005) ("Because this would be tantamount to saying that the product itself – in this case, the [reality show] – can serve as its own trademark, we decline to do so." (quoting *EMI Catalogue*, 228 F.3d at 63)).  The court distinguished trademark and copyright claims, stating that while "[t]rademark law is concerned with protection of the symbols, elements or devices used to identify a product in the marketplace and to prevent confusion as to its source[, i]t does not protect the content of a creative work of artistic expression as a trademark for itself."  *Id.* (quoting *EMI Catalogue*, 228 F.3d at 63).

In response, Munro cites *RMS Titanic, Inc. v. Zaller*, 978 F. Supp. 2d 1275 (N.D. Ga. 2013).  In that case the Northern District of Georgia considered a trade dress infringement claim based on the copying of a large-scale Titanic exhibit.  *Id.* at 1293-94. At the motion-to-dismiss stage, the court allowed the trade dress infringement claim, but it did not discuss why trade dress protections applied or the overlap between the Lanham Act and Copyright Act.  *Id.*  Thus, the *RMS Titanic* case does not respond to the serious questions raised in the other cases cited regarding how to balance copyright and trademark protections in accordance with the purposes of both doctrines.

Here, Munro's claims fail to the extent he claims trademark or trade dress protection for his style of light display because the light display is the good itself, rather than a mark on the good.  *See Leigh*, 212 F.3d at 1218.  Moreover, extending trademark protection to a particular style of artistic expression would improperly extend trademark law into the area of copyright protection.  *See Galerie Furstenberg*, 697 F. Supp. at 1289-

90.  Thus, the Court will dismiss with prejudice the trademark and trade dress claims to the extent they are based on Munro's style and the elements of Munro's artistic works.

To the extent Munro's claim is based on the similarity in name between Light Forest and Forest of Light, it presents a closer question.  The parties do not address this issue precisely, but in theory, the title of an artistic work could be a trademark if it identifies the source of goods or services.  The Lanham Act defines a trademark as "any word, name, symbol, or device . . . used by a person . . . to identify and distinguish his or her goods, including a unique product, from those manufactured or sold by others and to indicate the source of the goods."  15 U.S.C. § 1127.

Defendants argue that Munro has not pleaded that any trademark is tied to goods or services, arguing that Munro's works "merely identif[y] the artist rather than any products or services."  *Leigh v. Warner Bros.*, 10 F. Supp. 2d 1371, 1380 (S.D. Ga. 1998), *aff'd in part and rev'd in part on other grounds*, 212 F.3d 1210 (11th Cir. 2000). Munro has not provided facts suggesting that the name Forest of Light served a source-identifying function for a product or service.  *See Leigh* , 212 F.3d at 1218 (finding that a photographer's "web sites and printed advertisements or announcements largely use [the artwork] descriptively, as an example of [the photographer's] work, rather than as a trademark").  Munro does state that his endeavors related to the Field of Light and Forest of Light exhibitions "have grown to include an online presence, books, publications, apparel, videos, and documentaries," but he does not state whether the name Forest of Light is a mark on those items or whether it identifies the source of those items.  (Am. Compl. ¶ 43.)  Indeed, in discussing the likelihood of confusion based on the similar name, Munro states that visitors and venue purveyors may be confused and assume that

the exhibit is associated with Munro, (*id.* ¶ 77); he does not link it to any goods or services, only to himself. Thus, Munro has failed to state a trademark claim based on the name Forest of Light. However, because Munro could theoretically state a claim based on the similarities in name, if they are tied to goods and services, the Court will dismiss this claim without prejudice.

### C.    State Law Claims[5]

#### 1.    Preemption

Defendants contend that Munro's tortious interference, misappropriation, and unfair competition claims are based on the alleged copying of Munro's light displays, and therefore, they are preempted by the Copyright Act. "The Copyright Act preempts state laws that attempt to protect rights exclusively protected by federal law." *Davidson & Assocs. v. Jung*, 422 F.3d 630, 638 (8th Cir. 2005) (interpreting 17 U.S.C. § 301(a)).[6] Under the Copyright Act, a state law claim is preempted if

---

[5] The Court notes that Minnesota law applies to Munro's state law claims because this case was transferred due to improper venue under 28 U.S.C. § 1406(a). *See Eggleton v. Plasser & Theurer Exp. Von Bahnbaumaschinen Gesellschaft, MBH*, 495 F.3d 582, 590 (8th Cir. 2007) (stating that generally "[a] § 1406 transfer calls for application of the law of the transferee court").

[6] Specifically, the Copyright Act states:

On and after January 1, 1978**, all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright** as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103, whether created before or after the date and whether published or unpublished, **are governed exclusively by this title.** Thereafter, no person is entitled to **any such right or equivalent right** in any such work under the common law or statutes of any State.

17 U.S.C. § 301(a) (emphasis added).

(1) the work at issue is within the subject matter of copyright as defined in § 102 and 103 of the Copyright Act, and (2) the state law created right is equivalent to any of the exclusive rights within the general scope of copyright as specified in § 106 [of the Copyright Act].

*Ray v. ESPN, Inc.*, 783 F.3d 1140, 1142 (8th Cir. 2015) (quoting *Nat'l Car Rental Sys., Inc. v. Comput. Assocs. Int'l, Inc.*, 991 F.2d 426, 428 (8th Cir. 1993)).

The subject matter of copyright extends to "original works of authorship fixed in any tangible medium of expression," and includes "pictorial, graphic, sculptural works," "motion pictures and other audiovisual works," and "architectural works."  17 U.S.C. § 102(a).  Munro's claims relate to his prior light displays Forest of Light and Field of Light, which are artistic works under the Copyright Act.  Munro refers to himself as an artist, and refers to his prior displays at his "works," "light-based artwork and installations."  (Compl. ¶¶ 31-38; Am. Compl. ¶¶ 13-15.)  Thus, his works are within the subject matter of copyright.

If the work at issue is within the subject matter of copyright, the claims based on those works are preempted to the extent that "the state law created right is equivalent to any of the exclusive rights within the general scope of copyright as specified in § 106 [of the Copyright Act]."  *Ray*, 783 F.3d at 1142.  The Copyright Act "preempts only those state law rights that 'may be abridged by an act which, in and of itself, would infringe one of the exclusive rights provided by federal copyright law.'"  *Nat'l Car Rental Sys.*, 991 F.2d at 431 (quoting *Comput. Assocs. Int'l, Inc. v. Altai, Inc.*, 982 F.2d 693, 716 (2d Cir. 1992)).  The exclusive rights granted in § 106 include the right to reproduce the copyrighted work, to distribute copies of the work, and to display the work publicly. 17 U.S.C. § 106.  "If an extra element is 'required, instead of or in addition to the acts of

reproduction, performance, distribution or display, in order to constitute a state-created cause of action, then the right does not lie within the general scope of copyright and there is no preemption.'"   *Nat'l Car Rental Sys.*, 991 F.2d at 431 (quoting 1 Nimmer on Copyright § 1.01[B], at 1-14-15).   However, to prevent preemption, "the extra element [must] change[] the nature of the action so that it is qualitatively different from a copyright infringement claim."   *Stromback v. New Line Cinema*, 384 F.3d 283, 301 (6th Cir. 2004) (quoting *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 456 (6th Cir. 2001)).   "The existence of an extra element precludes preemption only where the element changes the nature, rather than the scope, of the action."   *Id.*; *see also Summit Mach. Tool Mfg. Corp. v. Victor CNC Sys., Inc.*, 7 F.3d 1434, 1441-42 (9th Cir. 1993) (requiring that an extra element change the nature of the claim to avoid preemption).

Defendants contend that Munro's state law claims are based on the alleged use, display, or reproduction of Munro's light displays, and therefore, are preempted.   Each claim will be discussed individually below along with Defendants' arguments that Munro failed to state a claim even if the claims are not preempted.

Before this Court, Munro's only substantive argument against dismissal of his state law claims is that Defendants' preemption arguments are premature.   (Pls.' Mem. in Supp. of Mot. to Amend at 5 n.3, Mar. 10, 2016, Docket No. 50.)   Munro cites only one case for support, and he does so incorrectly, attributing the quote "factual development is necessary . . . [and] defendant's 12(b)(6) motion to dismiss is not the appropriate vehicle through which the Court should address the overlap between the Lanham Act and Copyright Act" to *Johnson Controls, Inc. v. Phoenix Control Systems, Inc.*, 886 F.2d

1173, 1175 (9th Cir. 1989).[7]   (*Id.*)   This quote in fact comes from *Blue Nile, Inc. v. Ice.com, Inc.*, 478 F. Supp. 2d 1240, 1243 (W.D. Wash. 2007).   In that case, the court found that it needed more factual development to consider "the overlap between the Lanham Act and Copyright Act in the context of a claim attempting to protect a website's 'look and feel.'"   *Id.* at 1245.   Thus, the quotation Munro relies on does not suggest that courts categorically avoid Copyright Act preemption arguments at the motion-to-dismiss stage; rather, the court in *Blue Nile* found that it needed additional factual development when facing a particular question about the overlap of the Copyright Act and the Lanham Act in website design.   Rule 12 motions test the viability of a cause of action, and other courts have found this to be a proper stage to hear Copyright Act preemption arguments. *See, e.g.*, *Ray*, 783 F.3d at 1142, 1144-45 (affirming a Rule 12(b)(6) dismissal of state law claims as preempted by the Copyright Act).   Thus, the Court will consider whether each of Munro's claims are preempted by the Copyright Act, along with Defendants' other challenges.

### 2.     Tortious Interference with Prospective Business Opportunities

Munro alleges that Defendants tortiously interfered with his prospective business opportunity for a light display exhibit in Boston.   In support, Munro alleges that Defendants knew that he was talking with Boston officials about a public exhibit, and that they usurped his opportunity by contacting Boston officials with their proposed light exhibit plan.   (Compl. ¶¶ 110-114; Am. Compl. ¶¶ 116-122.)   Defendants contend that

---

[7] *Johnson Controls* itself appears not to be relevant.   In that case, the court upheld the district court's issuance of a preliminary injunction in a copyright claim involving a website, and it did not involve preemption or trademark claims.   886 F.2d at 1177.

Munro's tortious interference claim is preempted by the Copyright Act, and that even if it is not preempted, he failed to state a claim.

A state right is equivalent for the purposes of Copyright Act preemption if "the mere act of reproduction, performance, distribution, or display" infringes the state right. *Nat'l Car Rental Sys.*, 991 F.2d at 431. For a claim of tortious interference with prospective business relations under Minnesota law, a plaintiff must show: (1) the existence of a reasonable expectation of economic advantage or benefit belonging to plaintiff; (2) that the defendants knew of that expectation; (3) that defendants wrongfully and without justification interfered with plaintiff's reasonable expectation; (4) that in the absence of the defendants' wrongful act, it is reasonably probable that plaintiff would have realized the economic advantage or benefit; and (5) that plaintiff sustained damages. *Cenveo Corp. v. S. Graphic Sys., Inc.*, 784 F. Supp. 2d 1130, 1137-38 (D. Minn. 2011); *Harbor Broad., Inc. v. Boundary Waters Broads., Inc.*, 636 N.W. 2d 560, 569 (Minn. Ct. App. 2001). Based on those elements and Munro's allegations, his tortious interference claim is based on somewhat more than just reproduction of his works: he alleges that Defendants knew of his opportunity with Boston officials and intentionally interfered with that opportunity by taking it themselves.

Even if an additional act is required, however, the state law claim is still preempted unless "the extra element changes the nature of the action so that it is qualitatively different from a copyright infringement claim." *Stromback*, 384 F.3d at 301 (quoting *Wrench LLC*, 256 F.3d at 456). In *Stromback*, the Sixth Circuit found that a tortious interference claim was not qualitatively different than a copyright claim because the "foundation" of the claim was the violation of rights based in the Copyright Act. *Id.*

at 306-07.   The court noted that the additional requirements of knowledge of and intentional interference with a contract make the claim narrower than copyright, but not qualitatively different, because copyright protection anticipates the loss of opportunities and benefits based on unauthorized copying.   *Id.* at 306.[8]   The additional act Munro presents – knowing solicitation of a particular customer for a similar exhibit – narrows the scope of the claim, but does not qualitatively alter the nature of the claim.   The foundation of his tortious interference claim is still Defendants' alleged improper copying of his exhibit, and therefore, the claim is preempted by the Copyright Act.

Even if Munro's tortious interference claim were not preempted, it should still be dismissed because he failed to state a claim.   Munro alleges that he had "reasonable probabilities of prospective business opportunities to stage a large-scale, public exhibition" in Boston, and "reasonable probabilities of prospective business relationships with the City of Boston, the Boston Mayor's office, other local public officials, and affiliated entities and arts organizations."   (Compl. ¶ 111; Am. Compl. ¶ 117.)   When describing his talks with Boston at that time, he alleges only that he was contacted by "officials in Boston's Mayor's Office of Arts, Tourism & Special Events," and that they "expressed intense interest in bringing a public exhibition of Munro's installations to Boston" the next year.   (Am. Compl. ¶ 58; *see also* Compl. ¶ 66.)   He alleges that after he stopped hearing from Defendants, "communications with Boston public officials on the

---

[8] *See also Papa Berg, Inc. v. World Wrestling Entm't, Inc.*, No. 12-2406, 2013 WL 2090547, at *12 (N.D. Tex. May 15, 2013) (finding a tortious interference claim preempted to the extent it was based on reproduction and distribution of protected works, but not preempted to the extent it was based on re-registration and diversion of royalties); *Warren Sign Co. v. Piros Signs, Inc.*, No. 9-1984, 2010 WL 2802023, at *3-4 (E.D. Mo. July 15, 2010) (finding additional elements of awareness and intentional interference did not change the nature of the action and dismissing tortious interference claim as preempted by the Copyright Act).

opportunity for a Munro Boston exhibition tapered off, too." (Compl. ¶¶ 67-68; Am. Compl. ¶¶ 59-60.) He also described the Boston officials' interest in his work as "courting." (Compl. ¶ 66; Am. Compl. ¶ 116.) These allegations do not suggest a reasonable probability of a contractual relationship with Boston officials or that Defendants communicated with them or had the intent to interfere with Munro's relationship with the officials. This "courting" by Boston officials suggests the early stages of an agreement, not a reasonable probability that Munro would have realized an economic advantage or benefit. *See Cenveo Corp.*, 784 F. Supp. 2d at 1137-38.

Thus, the Court finds that Munro's tortious interference claim in this context is preempted by the Copyright Act, and that even if it were not, he has failed to state a claim for tortious interference.

### 3.    Misappropriation

Munro brings a common law misappropriation claim based on Defendants' copying of his prior works and his "exhibition processes and promotional models and methods." (Compl. ¶¶ 122-25; *see also* Am. Compl. ¶ 100-04.) To the extent he bases his misappropriation claim on the copying of his style of light displays, it is preempted by the Copyright Act. *See Belmore v. City Pages, Inc.*, 880 F. Supp. 673, 676 n.1 (D. Minn. 1995) (finding the Copyright Act provides the exclusive remedy for unauthorized copying and that misappropriation claims for unauthorized copying of protected works were preempted).

To the extent Munro's misappropriation claim is not preempted, it fails to state a claim. Munro's misappropriation claim before the Texas court relied on Texas cases

- 20 -

providing a tort of misappropriation. *See U.S. Sporting Prods., Inc. v. Johnny Stewart Game Calls, Inc.*, 865 S.W.2d 214, 218 (Tex. Ct. App. 1993). In his motion to amend, Munro now cites only a 1918 Supreme Court case, *International News Service v. Associated Press*, 248 U.S. 215 (1918). (Am. Compl. ¶ 104.) However, that case was decided before *Erie* and created federal common law in a case arising under state law, and thus it is no longer authoritative. *McKevitt v. Pallasch*, 339 F.3d 530, 534 (7th Cir. 2003). Some states have recognized common law claims of the same type, *see Sioux Biochemical, Inc. v. Cargill, Inc.*, 410 F. Supp. 2d 785, 805 (N.D. Iowa 2005) (collecting cases), but there is no indication that Minnesota is one of them.

Even in those states that have recognized such a claim, it is generally limited to the "hot news" doctrine established by *International News Service*. *See Fred Wehrenberg Circuit of Theatres, Inc. v. Moviefone, Inc.*, 73 F. Supp. 2d 1044, 1049-50 (E.D. Mo. 1999) (finding a "hot news" exception to preemption of Missouri misappropriation law). However, even if the "hot news" doctrine existed in Minnesota, Munro has not pleaded any facts meeting such a limited exception. *See id.* (describing the elements of a "hot news" misappropriation claim and finding the plaintiff's claim failed because it did not meet the final element – allowing copying in the context would not "so reduce the incentive to produce the product or service that its existence or quality would be substantially threatened"). Thus, Munro's common law misappropriation claim fails as preempted by the Copyright Act and due to the lack of a cause of action in Minnesota law.[9]

---

[9] While Minnesota law recognizes claims based on the misappropriation of trade secrets, *see, e.g.*, *Reliastar Life Ins. Co. v. KMG Am. Corp.*, No. 05-2079, 2006 WL 2529760, at *3

4.      **Unfair Competition**

Munro's unfair competition claim essentially restates all of his other claims:

> Defendants have used, infringed, and diluted the Munro Marks and Munro Trade Dress without authorization; misappropriated Munro's time, labor, skills, and efforts and the fruits thereof for self-serving competitive purposes and advantages; interfered with and usurped Munro's business opportunities and relationships; and acted dishonestly, unethically, and fraudulently towards Munro.

(Am. Compl. ¶ 138; *see also* Compl. ¶ 182 (stating the same).)  Defendants argue that the claim is preempted in the same manner as the other claims that it restates and that it also fails because it is not an independent tort.

"Unfair competition is not a tort with specific elements; it describes a general category of torts which courts recognize for the protection of commercial interests," including product disparagement, tortious interference with contract, and improper use of trade secrets.  *Zimmerman Grp., Inc. v. Fairmont Foods of Minn., Inc.*, 882 F. Supp. 892, 895 (D. Minn. 1994) (quoting *Rehab. Specialists, Inc. v. Koering*, 404 N.W.2d 301, 305-06 (Minn. Ct. App. 1987))).   "[T]o remain viable, a common law unfair competition claim 'must identify the underlying tort which is the basis for [the claim].'" *LensCrafters, Inc. v. Vision World, Inc.*, 943 F. Supp. 1481, 1490 (D. Minn. 1996) (quoting *Zimmerman*, 882 F. Supp. at 895).   Where an unfair competition claim is duplicative of another claim in the complaint, the unfair competition claim should be

---

(Minn. Ct. App. Sept. 5, 2006) (interpreting a tort of breach of confidentiality claim as "the common-law version of misappropriation of trade secrets"), Munro has not attempted to allege the elements of such a claim, *see id.* at *4 ("To qualify as a trade secret under [Minnesota law], information (1) must not be generally known or readily ascertainable, (2) must derive independent economic value from secrecy; and (3) must be the subject of reasonable efforts to maintain its secrecy.").

dismissed.  *See Zimmerman*, 882 F. Supp. at 895 (dismissing an unfair competition claim duplicative of an interference with contract claim).

To the extent that Munro's unfair competition claim is based on the copying of his light displays, it is preempted by the Copyright Act.  To the extent the claim reaches other conduct, Munro has failed to identify any underlying tort or it is duplicative of his other claims.  Therefore, the Court will dismiss his general unfair competition claim with prejudice.

### 5.  Fraud

Munro brings a common law fraud claim, alleging that Defendants made false or fraudulent statements that they would keep the information and materials Munro provided confidential.  (Compl. ¶ 103; Am. Compl. ¶ 108.)  Munro alleges that those statements were "knowingly false . . . or were made with reckless disregard of their falsity," that Defendants never intended to keep the information confidential, and that "on information and belief, [Defendants] shared them and their contents with others and used the materials and the information contained therein to facilitate the creation, design, production, and promotion" of the Light Forest exhibit and campaign.  (Compl. ¶ 105-06; *see also* Am. Compl. ¶¶110-11.)  Munro also alleges that he relied on those representations and was harmed by the fraud.  (Compl. ¶¶ 104, 108; Am. Compl. ¶¶ 109, 113.)  In his amended complaint, Munro adds that the conversations involved Rothman and Munro and occurred between October 18 and 22, 2012.  (Am. Compl. ¶ 108.)

Allegations of fraud "must be pled with particularity."  *Cox v. Mortg. Elec. Registration Sys., Inc.*, 685 F.3d 663, 672-73 (8th Cir. 2012) (quoting *Trooien v.*

*Mansour*, 608 F.3d 1020, 1028 (8th Cir. 2010)); *see also* Fed. R. Civ. P. 9(b) (requiring that circumstances constituting fraud or mistake be pled with particularity). Rule 9(b) "requires that a pleading include 'such matters as the time, place and contents of false representations.'" *Trooien*, 608 F.3d at 1028 (quoting *Bennet v. Berg*, 685 F.2d 1053, 1062 (8th Cir. 1982)).

Defendants contend that Munro has not alleged facts of a particular statement, who made the statement, when the statement was made, or any facts supporting an inference that the statement was false; rather, he has only pleaded "[o]n information and belief" that a confidentiality promise was broken. (Compl. ¶¶ 103-06.) Munro's proposed amended complaint adds the "who" and "when" – Rothman and between October 18 and 22, 2012. (Am. Compl. ¶ 108.) But, Munro still makes only bare assertions that Rothman's promise of confidentiality was false and that Defendants used and shared the confidential information in making the Light Forest exhibit; both were pled only "on information and belief." In *Florida State Board of Administration v. Green Tree Financial Corp.*, the court suggested that Rule 9(b) "requir[es] disclosure of facts relied on for pleadings based on information and belief." 270 F.3d 645, 668 (8th Cir. 2001). Accordingly, Munro must plead some facts supporting his "on information and belief" allegations. The only fact Munro provides supporting his belief that Defendants never intended to maintain confidentiality, and in fact breached his confidences, is that Defendants made their own light display in Boston. The Court finds this single fact insufficient to support the inference that Defendants intended to and did in fact breach a confidentiality promise; however, because Munro could potentially state a claim for

common law fraud with additional allegations, the Court will dismiss this claim without prejudice.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED that:**

1.      Defendants' Motion to Dismiss [Docket No. 35] is **GRANTED**.

2.      Munro's trademark claim to the extent it is based on the similarity in name and Munro's fraud claim are **DISMISSED without prejudice**.

3.      All other claims are **DISMISSED with prejudice**.

4.      Munro's Motion for Leave to Amend the Amended Complaint [Docket No. 49] is **DENIED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED:   September 29, 2016
at Minneapolis, Minnesota.

s/ John R. Tunheim
_____
JOHN R. TUNHEIM
Chief Judge
United States District Court