UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Bruce Munro and Bruce Munro Studio,<br><br>Plaintiff(s),<br><br>vs.<br><br>Lucy Activewear, Inc., Lucy Apparel, LLC, VF Outdoor, Inc., and VF Corporation,<br><br>Defendant(s). | Case No. 16-cv-79 (JRT/SER)<br><br><br>**<u>AMENDED COMPLAINT</u>**<br><br><br>JURY TRIAL DEMANDED |

Plaintiffs Bruce Munro and Bruce Munro Ltd. d/b/a Bruce Munro Studio (collectively, "Munro" or "Plaintiffs") allege as follows against Defendants VF Outdoor, Inc. and Mono Advertising, LLC (collectively, "Defendants"):

**THE PARTIES**

1.     Bruce Munro is an internationally acclaimed artist residing in England who focuses on the medium of light and is best known for large-scale, immersive, light-based installations and exhibitions produced through his eponymously named studio.

2.     Bruce Munro Ltd. d/b/a Bruce Munro Studio is a United Kingdom entity.

3.     VF Outdoor, Inc. ("Outdoor") is a California-based Delaware corporation that has already appeared in this action and that does business in this District.

4.     Mono Advertising, LLC ("Mono") is a Delaware limited liability company headquartered in Minneapolis, Minnesota that does business in this District and that may be served via its registered agent The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801.

1

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction under 28 U.S.C. § 1331, 1332, 1338(a) and (b), and 1367.  The state and common law claims in this action are so related to the federal claims that they form part of the same case or controversy.

6.      The Court has diversity jurisdiction under 28 U.S.C. § 1332, in that this is a civil action wherein the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs, and is between citizens of a state and citizens or subjects of a foreign state.

7.      The Court also has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question), as this action also arises under 15 U.S.C. § 1114, et. seq. (the Lanham Act).

8.      The Court has personal jurisdiction over these Defendants because they reside, transact business, or have purposefully availed themselves of the privilege of doing business in Minnesota and because the claims arise out of Defendants' conduct in Minnesota.  The Court has established that jurisdiction is proper for all Defendants in this District.  Order [ECF # 28].

9.      Venue is proper because Defendants reside and conduct business in this District within the contemplation of 28 U.S.C. § 1391.  The Court has established that venue of this action is proper in this District for all Defendants.  Order [ECF # 28].

## NATURE OF THE ACTION

10.      This action is for trademark infringement, trade dress infringement, dilution, false designation of origin, and unfair competition under the Lanham Act, 15 U.S.C. § 1114, et seq., and common law; for fraud, common law misappropriation, and tortious interference with business opportunities under state and common law; and for unfair competition under the Paris Convention pursuant to 15 U.S.C. § 1126.  Munro is entitled to injunctive, monetary, declaratory, exemplary, and equitable relief, including an accounting and a constructive trust

over all benefits unjustly received by Defendants.

11.     All claims arise out of a common nucleus of operative facts, Defendants' blatant, continuing, and knowingly unauthorized misappropriation and use in their own businesses, promotions, exhibitions, and marketing of Munro's distinctive and famous trademarks and trade dress associated with Munro's well-known iterative series of site-specific, large-scale, immersive light-based installations and exhibitions known as *Forest of Light*™ and *Field of Light*® and with Munro's related goods and services.  In disregard of confidentiality representations to Munro, Defendants exploited Munro's marks, trade dress, goodwill and efforts associated with Munro's creation, production, and promotion of Munro's acclaimed, signature *Field of Light*® and *Forest of Light*™ installations and exhibitions for their own benefit and to Munro's detriment.

12.     The discovery rule, the doctrine of equitable tolling and estoppel, and the continuing tort doctrine apply to Munro's claims.  Defendants' activities were concealed from Munro and inherently undiscoverable, even through the exercise of reasonable care.

## FACTS

### The Bruce Munro Story

13.     Bruce Munro is an acclaimed international artist known for light-based works, sculptures, and large-scale immersive installations and exhibitions produced through his studio, Bruce Munro Ltd. d/b/a Bruce Munro Studio.

14.     Mr. Munro is beloved throughout the world and his unique, light-based artwork and installations have been sold and exhibited at hundreds of top-tier galleries, museums, and public spaces across the globe for decades.

15.     Together, he and his studio create, design, develop, produce, promote and market Munro's creations and offerings, including Munro's highly successful and internationally lauded

*Forest of Light*™ and *Field of Light*® iterative series of site-specific, large-scale, immersive light-based installations and exhibitions that Munro is best known for and that incorporate a consistent and distinctive signature trade dress associated with Munro. Munro authorizes use of *Forest of Light*™ and *Field of Light*® marks, images, illustrations, and indicia for projects, exhibitions, and merchandise, including apparel, giftware, books, calendars, videos and television programming.

16.     Munro's professional honors include the Guggenheim Museum's 2010 invitation in celebration of its 50th anniversary to display in the inspirational rotunda of the Frank Lloyd Wright–designed Guggenheim building in Manhattan, a 2011 Artist of the Year Award from *Wiltshire Life Magazine*, and the 2013 American Alliance of Museums Excellence in Exhibition Award. Mr. Munro and Munro's exhibitions are also frequent subjects of articles, media interviews, stories, and reports, including a broadcast PBS documentary.

17.     Mr. Munro's life has been spent learning, practicing, and refining his craft, which is his livelihood. As a result, he has developed and is known for a unique and signature style that is valued and widely appreciated and desired by the public, by exhibitors and curators, and by other consumers of his services.

18.     Preeminent galleries, facilities, and public spaces around the world contract for Munro's in-demand exhibitions, installations, and associated services and products. Places like Houston's Discovery Green Park, the United Kingdom's Salisbury Cathedral, the Atlanta Botanical Gardens, and Pennsylvania's Longwood Gardens—one of the most famous display gardens in all of North America—have all held highly successful exhibitions of Munro's unique, large-scale light-based installations drawing millions of aggregate attendees. Munro's exhibitions, particularly the exhibitions of his famous signature *Field of Light*® and *Forest of*

*Light*™ iterative series of installations, routinely generate substantial media, public, and online interest and underwriter sponsor support, driven in part by attendant authorized events and multimedia and social media promotions.

19.     Private collectors and investors also retain and commission Munro to produce specially-commissioned, high-value works of art.  These commission opportunities and sales are spurred by Munro's exhibitions and installations and their attendant publicity and interest.

### Munro's Trademark And Trade Dress Rights

20.     Munro developed and owns the inherently distinctive trade dress for the famous iterative series of light-based installations and exhibitions known as *Forest of Light*™ and *Field of Light*®.  The non-functional trade dress consists of a combination of features that combine to create the unique look and feel of Munro's *Forest of Light*™ and *Field of Light*® series of installations and exhibitions.

21.     Figures 1 and 2 provide illustrative examples of the unique look and feel consistent throughout Munro's *Forest of Light*™ and *Field of Light*® series of installations and exhibitions.



**Figs. 1 and 2**.  Munro's FIELD OF LIGHT® and FOREST OF LIGHT™ (Longwood Gardens, PA).

22.     The trade dress for the *Forest of Light*™ and *Field of Light*® series of installations

includes, but is not limited to, the following elements (hereafter "Trade Dress"): (1) an outdoor exhibit; (2) of large scale; (3) a light-based design; (4) thousands of short, end-lighted stems or "stalks"; (5) in an array; (6) arranged upon a predominantly green space; (7) positioned off-kilter or splayed from the perpendicular; and (8) topped with variably lit bulbs.

23.     Munro began using the Trade Dress in 2004.

24.     The Trade Dress is inherently distinctive and consumers and others rely upon it to differentiate the source of services. The nature of the Trade Dress – with its grand scale motif of lights on splayed stalks – supports Munro's marketing and business strategy because, even from a picture, an illustration, or from far away, a *Field of Light*® or *Forest of Light*™ installation or exhibition can be recognized by its distinctive Trade Dress.

25.     Munro also owns and uses the registered and common law marks *Field of Light*® and *Forest of Light*™ (collectively, the "Munro Marks") in connection with Munro's famous iterative series of light-based installations and exhibitions that incorporate the Trade Dress and associated goods and services.

26.     Munro owns UK Registration No. UK00002559786 (registered Dec. 31, 2010) for the *Field of Light*® word mark for use with sculptures and sculptures made primarily of glass in International Class 21. Munro began using the *Field of Light*® mark no later 2004. Since then, Munro has used the *Field of Light*® mark in connection with Munro's series of light-based installations and exhibitions.

27.     In addition to registered trademarks, Munro has common law trademark rights in the word mark and term *Forest of Light*™.

28.     Munro began using the *Forest of Light*™ mark no later than June 2012. Since then, Munro has used the *Forest of Light*™ mark in connection with Munro's series of light-

based installations and exhibitions.

29.     Munro owns all rights associated with the highly acclaimed *Field of Light*® and *Forest of Light*™ series of installations.

### Development, Promotion, and Reception of
### Munro's Acclaimed *Field of Light*® and *Forest of Light*™ Installations

30.     Having tinkered with plans and designs for a number of years, Munro produced the first in the series of iterative light-based installations and exhibitions using the *Field of Light*® mark and incorporating the Trade Dress in 2004.

31.     It quickly gained notoriety, leading to ever increasing demand for installations and exhibitions of additional site-specific, iterative versions of Munro's *Field of Light*® and, more recently, *Forest of Light*™ installations at notable galleries, museums, and public spaces around the world, including in the United States.

32.     As a result, Munro is now best known for *Field of Light*® and *Forest of Light*™ and their "recurring motif of lights on stalks," as described in a 2012 *Washington Post* review. These installations are also the primary revenue driver for Munro's business and, as a result, hold inestimable value to Munro's business and livelihood.

33.     In the past decade, Munro has presented and exhibited various versions of *Field of Light*® and *Forest of Light*™ at preeminent facilities, venues, and public spaces worldwide.  The installations and exhibitions were seen and visited by millions of people; lauded in myriad media and online reports in widely circulated publications; consistently drove media and public interest, attendance, revenues, and publicity; and for exhibitors regularly resulted in hundreds of thousands of attendees, millions in underwriting, ticketing, gift shop, and food court revenues and valuable PR media impressions and online and social media engagement.

7

34.     Munro has expended substantial time, effort, labor, money, and resources promoting, producing and exhibiting the *Field of Light*® and *Forest of Light*™ installations and developing their associated business, production and promotional models, which include pre-exhibition collaboration with exhibitors to generate positive regional, national, and international publicity and coverage for and interest in Munro's exhibitions of *Field of Light*® and *Forest of Light*™.  Those efforts include traditional PR and online and social media campaigns built around the *Field of Light*® and *Forest of Light*™ Trade Dress and Marks.

35.     As a result, exhibitors see significant attendance, sponsorship and revenue increases and more than double their typical number of unique website visitors during a *Field of Light*® or *Forest of Light*™ exhibition, as well as substantial increases in web traffic and traditional and social media mentions.

36.     As an illustrative example, from mid summer to early fall of 2012, Munro exhibited versions of *Field of Light*® and *Forest of Light*™ at Pennsylvania's Longwood Gardens to regional and national publicity that included feature reports on Munro, the exhibit, and *Field of Light*® and *Forest of Light*™ in national publications such as the *Washington Post*. Munro's Longwood exhibition, which Tennessee's Cheekwood Botanical Gardens & Museum of Art later described as "wildly popular" in announcements for its own subsequent Munro exhibition, drew over 300,000 attendees, many from more than three hours away.  How popular was Munro's Longwood exhibition of *Field of Light*® and *Forest of Light*™ installations?  By comparison, the *Rolling Stones'* 2014 concert tour, one of the top tours of 2014, drew 651,816 attendees. In just one exhibition at Longwood, Munro and Munro's *Field of Light*® and *Forest of Light*™ installations drew roughly half that many attendees. As Longwood's director Paul Redman noted to the *Washington Post*, "'When that exhibit opened, [Munro] was a rock star. He

8

was a rock star.'"

37.     Due to their consistent Trade Dress and attendant public interest, Munro's exhibition of *Field of Light*® and *Forest of Light*™ installations consistently provide tangible, bottom-line attendance, publicity, and financial benefits for Munro's exhibiting customers, which has created strong desire, demand for and recognition of Munro's *Field of Light*® and *Forest of Light*™ and their associated Trade Dress.

38.     The Munro Marks, the Trade Dress and their goodwill are valuable intellectual property assets of Munro.

39.     Munro adopted, used in commerce, and publicized the Munro Marks and the Trade Dress in the United States, the United Kingdom, and elsewhere in connection with the *Field of Light*® and *Forest of Light*™ exhibitions and associated Munro business endeavors.

40.     Munro has continuously used the Munro Marks and Trade Dress in the United States, the United Kingdom, and elsewhere. Munro is entitled to protections for the Munro Marks and Trade Dress under 15 U.S.C. § 1126 and associated international conventions and treaties, including the Paris Covention.

41.     As a result of Munro's use of the Trade Dress and Munro Marks, and through Munro's efforts to promote the look and feel and marks associated with the *Field of Light*® and *Forest of Light*™ installations and exhibitions, the Trade Dress and Marks have achieved outstanding critical success and widespread public recognition, including with the public, the media, the arts community, and exhibitors, and have become highly valuable assets representing substantial good will.

42.     Munro's *Field of Light*® and *Forest of Light*™ installations have a reputation as high-quality, well-attended, highly-appreciated, revenue-enhancing exhibitions.  Gallery, venue,

and public and civic event space owners and curators and their underwriters are eager to affiliate and associate with Munro for exhibitions and opportunities involving *Field of Light*® and *Forest of Light*™ installations and associated sanctioned events, activities, and promotions under or connected with the Munro Marks and Trade Dress.

43.    As a result of the immense goodwill and interest engendered by *Field of Light*® and *Forest of Light*™ exhibitions and the associated Munro Marks and Trade Dress, Munro's endeavors have grown to include an online presence, books, publications, apparel, videos, and documentaries based on Munro's *Field of Light*® and *Forest of Light*™ exhibitions and the associated Munro Marks and Trade Dress.

44.    The goodwill Munro developed in the Munro Marks and Trade Dress are assets of inestimable value to Munro. It is critically important to Munro's livelihood, to Munro's reputation, and to Munro's marketing and promotion of his products and services, including exhibitions of *Field of Light*® and *Forest of Light*™ installations, sponsored underwriting, and sales of specially commissioned works.

45.    Munro has invested substantially in promoting the *Field of Light*® and *Forest of Light*™ installations and exhibitions.  Munro spent years of time, labor, money, and effort establishing the Munro Marks and Trade Dress in the minds of consumers—including gallery, venue, and public event space curators, underwriters, collectors, art enthusiasts, and the public— as representative of high-quality, distinctive, quality exhibitions and installations.  As a result, consumers associate the Munro Marks and the Munro Trade Dress with not only Munro's *Field of Light*® and *Forest of Light*™ installations and exhibitions but also with Munro as an acclaimed artist and provider and producer of successful, high-quality, critically-acclaimed exhibitions and related officially-sanctioned services and merchandise.

10

46.     Munro's *Field of Light*® and *Forest of Light*™ installations and exhibitions have received substantial media attention in publications with widespread circulation, including the *Washington Post*, *Wall Street Journal* and *Houston Chronicle*.  Munro has also promoted the *Field of Light*® and *Forest of Light*™ installations and exhibitions on social media and via other web and online outlets.  As a result of the extensive publicity, advertising, promotion, and acclaim of and for Munro, Munro's *Field of Light*® and *Forest of Light*™ series of iterative installations, and Munro's associated exhibitions and endeavors under the Munro Marks and Trade Dress, the Munro Marks and the Trade Dress are famous within the meaning of the Lanham Act and state law and have acquired secondary meaning so that they have come to identify Munro as the source of any *Field of Light*® and *Forest of Light*™ installations and associated goods, services, exhibitions, events, and activities and so that any product, service, installation, event, exhibition, promotion, or advertising bearing, incorporating, or marketed under the Marks or Trade Dress or any confusingly-similar imitation thereof is associated by consumers, the public, and the trade as being affiliated with Munro.

47.     As a result, the Trade Dress and the Munro Marks associated with the *Field of Light*® and *Forest of Light*™ iterative series of installations are distinctive by virtue of having acquired secondary meaning.

48.     The Munro Marks and the Trade Dress are also inherently distinctive and are associated in the minds of consumers, the public and the trade with Munro, Munro's *Field of Light*® and *Forest of Light*™ iterative series of installations and exhibitions, and associated goods and services.  The Munro Trade Dress is arbitrary and fanciful and is entitled to the highest protection afforded by law.

11

## The Defendants

49.     Outdoor is a subsidiary of VF Corporation ("VF"), the $12 billion Fortune 500 retail conglomerate and apparel and footwear manufacturer behind the *lucy*®, Wrangler®, Vans®, Lee®, Nautica®, Timberland®, North Face®, and other national apparel brands and retail stores.

50.     Outdoor is responsible for day-to-day business operations and sales activities associated with the *lucy*® apparel brand and its national chain of *lucy*® retail stores and online outlets, which Outdoor operates as a business unit within the VF conglomerate.  Outdoor promotes and sells *lucy*® apparel throughout the United States and in Minnesota, including through its local retail stores and over its online outlets, websites, and social media platforms. Outdoor is directly, vicariously, and jointly responsible and liable for all *lucy*® brand-related activities described herein.

51.     Outdoor retained and hired Mono as its advertising agency in 2012.  Outdoor authorized and contracted for Mono to develop a national campaign to promote and publicize the *lucy*® apparel brand, retail stores, and online outlets.

52.     Mono served as Outdoor's authorized agent and representative and acted with actual and apparent authority.  Outdoor ratified, adopted, and benefited from Mono's acts and statements described herein, which were within the scope of and in furtherance of its agency and authority.  All statements, acts, and knowledge of Mono are therefore attributable to Outdoor and Outdoor is vicariously and directly responsible and liable for Mono's acts, statements, conduct, decisions, and omissions described herein.

53.     Mono pitched and sold Outdoor on the concept of an advertising and promotional campaign for *lucy*® oriented around a branded deployment of Munro's popular and highly successful *Forest of Light*™ and *Field of Light*® installations.

54.     In October 2012, Mono solicited Munro to develop and produce for it and Outdoor a version of Munro's famous *Forest of Light*™ and *Field of Light*® installations to be the focus of a public promotional event and a national advertising, branding and marketing campaign for the *lucy*® brand and the *lucy*® retail stores and online outlets.

55.     In a series of calls and emails from October 18th through 22nd, Mono producer and employee Melissa Rothman indicated to Munro personnel her awareness of previous Munro exhibitions, stated Mono's (and Outdoor's) desire to secure and stage a public exhibition of Munro's famous *Forest of Light*™ and *Field of Light*® installations to promote the *lucy*® athleticwear brand and serve as the focal point for a *lucy*® advertising and brand awareness campaign, and inquired about what it might take to put on such an exhibition and the publicity, attendance, and results that might be expected.

56.     During the discussions, Ms. Rothman requested additional information and materials about Munro's *Field of Light*® and *Forest of Light*™ installations and exhibitions, related attendance figures, achieved online/multi-media traffic, and promotional methods used for the exhibitions. Ms. Rothman agreed and s promised both verbally and in confirmatory emails to keep any provided materials and information confidential.

57.     Relying on these representations, Munro provided Ms. Rothman and Mono with a private impact report from Munro's Longwood Gardens exhibition, which displayed multiple examples and illustrations of the Munro Marks and Trade Dress associated with Munro's famous *Forest of Light*™ and *Field of Light*® installations, highlighted effective marketing and promotional techniques and business methods used to effectively promote Munro's exhibitions and drive attendance and online engagement, and discussed the attendance, sales figures and public feedback for the Longwood Gardens exhibition.  Munro also discussed with Ms. Rothman

13

that report, underwriting, sponsorship opportunities, and upcoming exhibition opportunities that might be available for *lucy*® to underwrite, and disclosed that Munro had been approached about an opportunity in Boston for Munro's *Forest of Light*™ and *Field of Light*® installations.

58.     At the time, officials in Boston's Mayor's Office of Arts, Tourism & Special Events had contacted Munro. They had seen and experienced Munro's Longwood Gardens exhibition and expressed intense interest in bringing a public exhibition of Munro's installations to Boston in 2013.  During discussions between Munro's representative and Mono's Ms. Rothman, this opportunity was mentioned as an upcoming chance for *lucy*® to underwrite a major metropolitan public exhibition of a *Field of Light*® or *Forest of Light*™ installation.

59.     Shortly thereafter, however, Mono and Ms. Rothman ceased communications with Munro's representatives about the *lucy*® proposal.  Subsequent to October 22nd, Munro and did not hear from Ms. Rothman or Mono again.

60.     Not long after, communications with Boston public officials on the opportunity for a Munro Boston exhibition tapered off, too.

**Defendants' Wrongful Conduct**

61.     Mono and Outdoor did not adhere to their confidentiality promises to Munro.

62.     Unbeknownst to Munro, Mono and Outdoor had not shelved the *lucy*® project or their desire to model a *lucy*® advertising campaign and installation on the well-known Trade Dress and Marks associated with Munro's successful *Forest of Light*™ and *Field of Light*® series of installations.

63.     Instead, without informing Munro or securing Munro's participation or approval, and relying on Munro's confidentially-provided materials and information, Mono and Outdoor nevertheless staged, launched and promoted in support of Outdoor's *lucy*® brand an unauthorized

14

Boston-area exhibition and associated national advertising campaign incorporating and based on Munro's Trade Dress and *Forest of Light*™ mark (or colorable imitations thereof).

64.    Figures 3 – 5 show illustrative examples of Defendants' advertising and marketing photos of Defendants' knock-off installation and exhibition, which Defendants extensively promoted for *lucy*® under the *Light Forest* moniker, a confusingly similar and facially blatant transposition of Munro's well-known *Forest of Light*™ mark.

 



**Figs. 3 - 5.** lucy® *Light Forest* and branded headstone plaque (Charles River Esplanade, Boson, MA).

65.    Defendants' multi-million dollar light-based *Light Forest* installation and exhibition, the length of a football field and made up of an array of thousands of stem-mounted lights, shared at least the following non-functional design elements with Munro's *Forest of*

*Light*™ and *Field of Light*® series of installations: (1) an outdoor exhibit; (2) of large scale; (3) a light-based design; (4) thousands of short, end-lighted stems or "stalks"; (5) in an array; (6) arranged upon a predominantly green space; (7) positioned off-kilter or splayed from the perpendicular; and (8) topped with variably lit bulbs. *Compare, e.g.,* Figs. 3 – 5 *with* Figs. 1 – 2.

66.     Defendants' knock-off *Light Forest* installation and exhibition substantively incorporated and wholly appropriated Munro's Trade Dress and the unique look and feel that is the hallmark of and consistent throughout Munro's *Forest of Light*™ and *Field of Light*® series of iterative installations.

67.     Defendants' *Light Forest* installation and exhibition was publicly staged in Boston during the month of October 2013.  Mono has publicly boasted that the installation and exhibition drew over 100,000 in-person attendees and visitors.

68.     Mono and Outdoor extensively promoted and publicized the knock-off *Light Forest* installation and exhibition and the *lucy*® apparel brand, retail stores, and online outlets with an affiliated advertising, publicity, social media, multimedia and online campaign.  The campaign included, among other things, national TV and web spots, print media, press releases, in-store mock-up displays, and extensive experiential, online, interactive and social media promotions and engagements.

69.     The campaign – which is still ongoing – repeatedly utilizes the confusingly similar *Light Forest* moniker transposed from Munro's well-known *Forest of Light*™ mark and was (and still is) based primarily on images incorporating the appropriated Munro Trade Dress and the unique look and feel that is the hallmark of and consistent throughout Munro's *Forest of Light*™ and *Field of Light*® series of iterative installations.

70.     Mono has publicly boasted that the knock-off campaign fueled over 307,000,000

16

related PR media impressions and successfully drove web-traffic, interest, engagement, and sales for Outdoor's *lucy*® apparel brand and *lucy*® retail and online stores. In industry presentations, Mono founder and senior executive Jim Scott bragged that the *Light Forest* exhibition and Multimedia Campaign "ha[d] brought incredible results."

71.     The campaign appeared nationwide and remains readily available online.

72.     Outdoor continues to run the campaign and display campaign images on its social media sites and on its o www.lucylightforest.com and www.lucylightforest.com/about websites, which announce that, "We are looking for the next location for our Lucy Light Forest."

73.     To promote Outdoor's *lucy*® brand business and Mono's own business, Mono also continues to run the campaign and display campaign images (including Figs. 3 and 5) and videos (Fig. 6, below) on Mono's https://mono-1.com/work/lucy-activewear-light-forest website.



**Fig. 6.** *Light Forest* campaign image and video from Mono's website.

74.     Mono worked on all aspects of the knock-off *Light Forest* installation, exhibition and campaign.  With the exception of the on-site Boston installation, most of Mono's work was performed in Minnesota.

75.     Outdoor worked with Mono and approved all aspects of the knock-off *Light*

*Forest* installation, exhibition and campaign.

76.    Munro has repeatedly asked Defendants to discontinue their wrongful conduct, pull the campaign and all associated images, and forgo any future exhibitions, but to date they have refused.

**Likelihood of Confusion**

77.    Given the striking similarities between the names and the trade dress of Munro's *Forest of Light*™ and *Field of Light*® series of iterative installations and Defendants' *Light Forest* installation, exhibition and promotional campaign materials, there is a likelihood that consumers will attend (or venues will provide exhibition opportunities) for Defendants' *Light Forest* installations and exhibitions, visit Outdoor's *lucy*® stores and online outlets, purchase Outdoor's *lucy*® brand apparel, and secure Mono's services under the mistaken belief that they come from, are sponsored or licensed by, or are associated or affiliated with Munro, the purveyor of Munro's popular *Forest of Light*™ and *Field of Light*® installations and exhibitions.

78.    The likelihood of confusion is f exacerbated by the fact Defendants subsidize and allow free access to their *Light Forest* exhibitions, and consumers are therefore unlikely to exercise a great deal of care.

79.    Confusion is also likely because Defendants are using the same marketing channels employed to market Munro's *Forest of Light*™ and *Field of Light*® installations and exhibitions and market in the same geographic areas.

80.    As a result of Defendants' described activities, Munro's efforts and Munro's famous Trade Dress and Marks were appropriated, imitated, diluted, blurred, and tarnished by Defendants and Munro was deprived and usurped of significant opportunities, including for lucrative exhibition and promotion of his installations (including in Boston).

81.     Defendants unjustly benefited and continue to benefit from their unauthorized exploitation and appropriation of Munro's marks, trade dress, efforts, and business methods, which enabled them to more rapidly and at significantly less cost and commercial risk design, develop, prototype, pitch, secure prime civic exhibition space for, plan, launch, and publicize their *Light Forest* exhibition and associated campaign without the attendant creative skills, efforts, and trial and error of starting that endeavor from scratch or the accompanying uncertainty over how a dissimilar offering might be received by potential exhibitors or the public.

### COUNT I
### Trademark & Trade Dress Infringement
### in Violation of Section 43 of the Lanham Act (15 U.S.C. § 1125(a))

82.     Munro re-alleges the above paragraphs.

83.     Defendants' described conduct constitutes unauthorized use in commerce, in connection with goods or services, of words, terms, names, symbols, or devices, or combinations thereof, or false designation of origin, false or misleading representation of fact which is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendants with Munro, or as to the origin, sponsorship, or approval of Defendants' exhibitions, installations, products and services by Munro in violation of 15 U.S.C. § 1125(a).

84.     Defendants have used the term "Light Forest" and the overall look and feel of the Munro Trade Dress on advertising, promotional, and publicity materials and efforts connected with their business in manners identical or confusingly similar to Munro's use of the Munro Marks and Munro Trade Dress. The "Light Forest" moniker and trade dress used for the *Light Forest* exhibition and campaign are identical to or are confusingly similar, colorable variations of the Munro Marks and Trade Dress.

85.     On information and belief, the Defendants' offerings under their imitations of the Munro Marks and Munro Trade Dress are of dissimilar quality from offerings available from Munro and Munro's legitimate authorized exhibitors, licensees, and sponsors.

86.     Without authorization, the Defendants (and Mono) have used in interstate commerce a reproduction, counterfeit, copy or confusingly similar or colorable imitation of the Munro Marks and Munro Trade Dress in connection with the sale, offer for sale, distribution, advertising and promotion of goods, merchandise, services and events, with such uses being likely to cause confusion or to cause mistake or to deceive.  Defendants' prominent and extensive use and display of confusingly similar, colorable imitations of Munro's famous *Forest of Light*™ Mark and Trade Dress in advertising and on promotional materials for the Defendants' offerings has caused and is likely to cause confusion and mistake among the purchasing and consuming public, or will deceive the purchasing and consuming public as to the origin, sponsorship, or approval of the goods, merchandise, services, events, and activities of the Defendants and/or otherwise cause confusion or mistake among the purchasing and consuming public or deceive the purchasing and consuming public.

87.     On information and belief, the Defendants' and Mono's unauthorized use of the Munro Trade Dress, the *Forest of Light*™ mark, and confusingly similar imitations thereof is likely to and did: (a) cause confusion, mistake and deception; (b) cause the public to erroneously believe that Defendants' offerings are the same as Munro's offerings or that Defendants or their offerings are authorized, sponsored, or approved by Munro or are affiliated, connected or associated with or in some way related to Munro; and (c) result in the Defendants unfairly benefiting and profiting  from  the  reputation of Munro, the Munro Marks, and the Munro Trade Dress all to the substantial and irreparable injury of the public, Munro, the Munro Trade Dress,

20

the *Forest of Light*™ mark, and the substantial goodwill represented by such trade dress and mark.

88.     This confusion causes irreparable harm to Munro and weakens the distinctive qualities of the Munro Trade Dress and the *Forest of Light*™ mark.

89.     Defendants' actions were not authorized by Munro.

90.     Defendants acted deliberately and willfully in attempt to trade upon the goodwill associated with the *Forest of Light*™ and *Field of Light*® Trade Dress and the *Forest of Light*™ mark.

91.     Defendants' conduct is causing, and will continue to cause, irreparable harm to Munro unless it is enjoined by this Court.

92.     Defendants have unjustly benefited and Munro has suffered damages as a result of Defendants' actions in an amount to be proven at trial.

**COUNT II**
**Trademark & Trade Dress Dilution**
**in Violation of Section 43 of the Lanham Act (15 U.S.C. § 1125(c))**

93.     Munro re-alleges the above paragraphs.

94.     To Munro's detriment, Defendants' unauthorized use of Munro's famous Trade Dress and *Forest of Light*™ Mark and colorable imitations thereof has resulted in the dilution of the exclusive rights that Munro is entitled to enjoy in connection with Munro's Marks and Trade Dress and their use in connection with the promotion of Munro's and authorized exhibitors' or licensees' installations, exhibitions, event, goods, services and other offerings.

95.     Defendants' conduct has caused and is continuing to cause dilution by blurring as it impairs the distinctiveness of Munro's famous Trade Dress and *Forest of Light*™ Mark, which Defendants willfully intended to trade upon.

21

96.     Defendants' conduct has also caused and is continuing to cause dilution by tarnishment as it creates an association that harms the reputation of Munro's famous Trade Dress and *Forest of Light*™ Mark, which Defendants willfully intended to harm the reputation of.

97.     Defendants' conduct is causing, and will continue to cause, irreparable harm to Munro unless it is enjoined by this Court.

98.     Defendants have unjustly benefited and Munro has suffered damages as a result of Defendants' actions in an amount to be proven at trial.

**COUNT III**
**Misappropriation**

99.     Munro re-alleges the above paragraphs.

100.    By modeling their *Light Forest* installation and campaign on Munro's successful *Field of Light*® and *Forest of Light*™ installations, Munro's Trade Dress and *Forest of Light*™ Marks, and Munro's production, promotion and business methods, Defendants avoided significant costs, delays, creative insights, trial and error, labor, planning, and resources ordinarily needed to conceive of, design, refine, and successfully implement an endeavor of the scope and scale of Munro's *Field of Light*® and *Forest of Light*™ installations.

101.    To circumvent similar costs, impediments, delays, and potential risks and uncertainties associated with attempts to conceive and develop a publicly-desired exhibition from scratch, Defendants appropriated in whole or in part significant aspects and features of Munro's *Field of Light*® and *Forest of Light*™ series of installations and related exhibition processes, promotional models and methods for their competitive, knock-off *Light Forest* exhibition and associated campaign.

22

102.    Defendants have inequitably and unjustly obtained a free ride on and benefited from Munro's prior work and efforts.

103.    Defendants directly compete with Munro for limited opportunities, spaces, and venues for the public exhibition of large-scale, light-based installations.

104.    Defendants' and Mono's conduct and activities violate the misappropriation doctrine announced by the U.S. Supreme Court in Int'l News Service v. Associated Press, 248 U.S. 215 (1918).

105.    Munro suffered injury and harm as a direct and proximate result of these misappropriations.

106.    Munro seeks to recover all damages and other relief to which Munro is entitled for Defendants' misappropriation in an amount to be proven at trial.

## COUNT IV
## Fraud

107.    Munro re-alleges the above paragraphs.

108.    Mono made false and fraudulent statements and promises to Munro.  Specifically, Mono represented to Munro between October 18 – 22, 2012 via its employee Melisa Rothman that it would maintain the confidentiality of materials and information Munro provided and disclosed to it concerning Munro's *Field of Light*® and *Forest of Light*™ installations and exhibition.

109.    Mono intended and expected Munro to rely on those representations, which it did.

110.    The statements and promises were false when made or were made with reckless disregard of their falsity.  On information and belief, Mono did not intend to maintain the confidentiality of the materials and information that Munro provided.

23

111.     Contrary to these promises, Mono did not maintain the confidentiality of materials and information that Munro provided and instead shared and used the materials and the information contained therein to facilitate the creation, design, production, and promotion of the competitive *Light Forest* exhibition and associated campaign.

112.     The fraud was inherently undiscoverable.

113.     Munro suffered injury and harm as a direct and proximate result of this fraud.

114.     Mono and Outdoors have unjustly benefited and Munro has suffered damages as a result of Defendants' actions in an amount to be proven at trial.

**COUNT V**
**Tortious Interference with and Usurpation**
**of Prospective Business Opportunities and Relationships**

115.     Munro re-alleges the above paragraphs.

116.     Mono and Outdoors not coincidentally selected Boston—the city courting Munro—for their *Light Forest* installation and exhibition.  They and their agents also contacted local and regional public officials, secured a prominent Boston public space for their competitive, exhibition, and planned out associated logistics.

117.     Until then, Munro had reasonable probabilities of prospective business opportunities to stage a large-scale, public exhibition of Munro's *Field of Light*® and/or *Forest of Light*™ installations in the Boson vicinity and reasonable probabilities of prospective business relationships with the City of Boston, the Boston Mayor's office, other local public officials, and affiliated entities and arts organizations.

118.     Mono was aware of Munro's prospective Boston relationships and opportunities, which Mono was informed of during discussions with Munro.

119.     As result of Defendants' actions, Boston officials on information and belief

24

ceased discussions with Munro for a Boston-area exhibition. Consequently, Munro lost a premier exhibition opportunity as well as the commensurate publicity, engagement, specialty commissions, private sales, revenues, and momentum for follow-on exhibitions that a Boston exhibition would bring.

120.     On information and belief, Defendants wrongfully, intentionally, willfully, and without justification interfered with and usurped Munro's prospective business opportunities and relationships.  It was reasonably foreseeable that Defendants' activities would induce and cause co-parties to discontinue discussions with Munro regarding a prospective exhibition.

121.     On information and belief, Defendants usurped Munro's Boston exhibition opportunity to launch their competitive, knock-off *Light Forest* exhibition in Munro's place.

122.     The interferences and usurpations directly and proximately caused Munro injuries and damages and unjustly and inequitably benefited Defendants.

123.     On information and belief, as a direct, proximate, and reasonably foreseeable result, Munro lost the prospective opportunity for a large-scale exhibition of his works in a major metropolitan area and the valuable commensurate publicity, engagement, specialty commissions, private sales, revenues, and momentum for follow-on exhibitions regularly generated from public exhibitions of Munro's large-scale, immersive, light-based installations.

124.     Munro suffered actual damage or loss as a result of these wrongful interferences.

125.     Mono and Outdoors have unjustly benefited and Munro has suffered damages as a result of Defendants' actions in an amount to be proven at trial.

### COUNT VI
### False Designation of Origin and
### Unfair Competition under 15 U.S.C. § 1125(a)

126.     Munro re-alleges the above paragraphs.

25

127.     Defendants' use of the term "Light Forest" and combination of distinctive features and elements of the Munro Trade Dress into their *Light Forest* exhibition and associated campaign and related promotional materials constitutes a false designation of origin which is likely to deceive and, upon information and belief, has deceived the public, customers, and prospective customers into believing that the Defendants' offerings are associated with, authorized by, or those of Munro, and as a consequence, are likely to divert and have diverted customers (including but not limited to curators, exhibitors, and attendees) away from Munro.

128.     On information and belief, the Defendants continue to attempt to capitalize on the good name, reputation, and goodwill of Munro.

129.     Defendants' described acts constitute use of a word, term, name, symbol, and a false designation of origin which is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of the Defendants' offerings with Munro, or as to the origin, sponsorship, or approval of the Defendants' goods, services, and commercial activities by Munro, in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

130.     The Defendants' acts misrepresent the nature, characteristics, qualities, or origin of the Defendants' goods, services, or commercial activities in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B).

131.     The Defendants' conduct has caused and if not enjoined will continue to cause irreparable damage to Munro, the Munro Trade Dress, the Munro Marks (including the *Forest of Light*™ mark), and Munro's trademark and trade dress rights, good name, reputation and goodwill in a manner that cannot be fully compensated by monetary damages.

132.    Munro is entitled to recover Defendants' gross profits, treble Munro's damages and detriment, and the cost of the action under 15 U.S.C. § 1117(a) and to have all offending articles and their means of manufacture turned over and destroyed under 15 U.S.C. § 1118.

133.    Because this is an exceptional case, Munro is entitled to an award of reasonable attorneys fees.

134.    The Defendants' false designation of origin and unfair competition will continue unless enjoined by this Court.

135.    Munro has no adequate remedy at law.

## COUNT VII
### Unfair Competition
### in Violation of Paris Convention, the Lanham Act, and Common Law

136.    Munro re-alleges the above paragraphs.

137.    Defendants' conduct described in the foregoing paragraphs constitutes unfair competition, including under the Lanham Act (15 U.S.C. § 1125(a)) and the Paris Convention (as incorporated into U.S. law under 15 U.S.C. § 1126).

138.    Defendants have used, infringed, and diluted the Munro Marks and Munro Trade Dress without authorization; misappropriated Munro's time, labor, skills, and efforts and the fruits thereof for self-serving competitive purposes and advantages; interfered with and usurped Munro's business opportunities and relationships; and acted dishonestly, unethically, and fraudulently towards Munro.

139.    Defendants actions maliciously interfered with Munro's ability to properly and fully conduct Munro's affairs and business endeavors in an unimpeded fashion.

140.    Defendants are guilty of unfair competition and other unfair trade practices in violation of the Paris Convention, the Lanham Act and common law.

141.    Munro has been damaged as a direct and proximate result of Defendants' actions in an amount to be proven at trial.

## PRAYER

Accordingly, Munro asks to be awarded judgment against Defendants for the following:

a.    all damages, statutory damages, exemplary damages, enhanced damages, and other legally permissible damages or recoveries allowed by law, statute, or equity;

b.    an accounting and recovery of Defendants' gross profits on *lucy*® apparel sales and all amounts by which Defendants have been unjustly enriched or benefited;

c.    specific performance, declaratory relief, and temporary, preliminary and permanent injunctive relief as alleged and as otherwise allowed;

d.    seizure and destruction of any offending articles, advertising, and the equipment used to make them;

e.    imposition of a constructive trust and other equitable remedies;

f.    pre-judgment and post-judgment interest at the maximum legal rate;

g.    costs and attorneys' fees; and,

h.    all other relief to which Munro may be entitled or as the court may deem just, equitable, necessary, proper or appropriate under the circumstances.

## JURY DEMAND

Munro demands a jury trial for all issues so triable in this action.

28

Dated: March 10, 2016                    Respectfully submitted,

                                         LAW OFFICES OF CARL F. SCHWENKER

                                    By:  /s/ *Carl F. Schwenker*
                                         Carl F. Schwenker
                                         Texas Bar No. 00788374 (*pro hac vice*)
                                         The Haehnel Building
                                         1101 East 11th Street
                                         Austin, Texas 78702
                                         Tel. (512) 480-8427
                                         Fax (512) 857-1294
                                         cfslaw@swbell.net

                                         YOST & BAILL, LLP

                                    By:  /s/ *Steven L .Theesfeld*
                                         Steven L. Theesfeld (ID #216860)
                                         2050 U.S. Bank Plaza South
                                         220 South Sixth Street
                                         Minneapolis, MN  55402
                                         612.338.6000
                                         stheesfeld@yostbaill.com

                                         ATTORNEYS FOR BRUCE MUNRO
                                         AND BRUCE MUNRO STUDIO

## <u>CERTIFICATE OF SERVICE</u>

      I certify that the foregoing was served on all counsel of record via the Court's ECF system on March 10, 2016.

      By: <u>/s/ *Steven L .Theesfeld*</u>
          Steven L. Theesfeld (ID #216860)